FORD O'BRIEN LLP
Adam C. Ford
Robert S. Landy (*pro hac vice pending*)
575 Fifth Avenue
17th Floor
New York, New York 10017
aford@fordobrien.com
(212) 858-0040
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GUY GENTILE, | |
| Plaintiff, | Case No.  2:19-cv-05155 (JLL/JAD) |
| v. | (ECF) |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A PRELIMINARY**
**INJUNCTION AND A TEMPORARY RESTRAINING ORDER**

March 5, 2019

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 7

ARGUMENT ................................................................................................................... 21

   I.   Gentile is Likely to Succeed on the Merits ............................................................ 22

      A.   The SEC Cannot Issue Subpoenas for Documents or Testimony to Investigate Gentile, or any Target, Without Authorization from the Commission in a Formal Order ............ 22

      B.   Every Subpoena Issued in the SEC's New Investigation Is Not Reasonably Relevant to an Authorized Investigation ............................................................ 22

      1.   The Traders Café FOI is stale .............................................................. 23

      2.   The Traders Cafe FOI never authorized or contemplated an investigation of Gentile or his companies ............................................................ 23

   II.   Gentile is Irreparably Harmed Each Time the SEC Subpoenas a Third Party to Provide Documents or Testimony About Him or His Businesses Without a Proper Basis to Do So 24

   III.   The Commission Will Not Be Harmed by an Injunction that Merely Prevents its Enforcement Staff from Failing to Adhere to Well-Established Procedural Requirements 25

   IV.   The Public Interest Will Be Served by a Narrowly-Tailored Injunction ..................... 26

      A.   The SEC Has Recently Admitted to this Court, and the United States Court of Appeals for the Third Circuit, that It Has no Information that Gentile or any of His Companies Engaged, Are Engaging or Are About to Engage in Conduct that violates the Securities Laws ................................................................................................ 26

      B.   The Public Interest Is Served by an Injunction that Prevents the Staff of the Division of Enforcement from Taking Consequential Actions Without Obtaining Proper Authority from the Commission Under 17 C.F.R. 202.5(a) ................................................ 26

   V.   The Court Should Enter a Temporary Restraining Order Pending a Hearing on this Motion ........................................................................................................... 27

CONCLUSION ................................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Bragg v. Tuccillo,*
  CV 16-8628-BRM-LHG, 2017 WL 5565671, at *4 (D.N.J. Nov. 20, 2017) ......................26

*EEOC v. Technocrest Sys.,*
  448 F.3d 1035 (8th Cir. 2006) .............................................................................22

*EEOC v. Tire Kingdom, Inc.,*
  80 F.3d 449 (11th Cir. 1996) ..............................................................................22

*Heartland Payment Sys., LLC v. Volrath,*
  18-1155, 2019 WL 413759, at *2 (3d. Cir. Feb. 1, 2019) ...................................21

*Kokesh v SEC,*
  137 S. Ct. 1635 (2017) ...............................................................................11, 12, 16

*NutraSweet Co. v. Vit-Mar Enters., Inc.,*
  112 F.3d 689 (3d Cir. 1997) ...............................................................................26

*SEC v. Wheeling-Pittsburgh Steel Corp,*
  648 F. 2d. 118 (3d Cir. 1981) .............................................................................2, 21

*United States v. Gentile,*
  235 F. Supp. 3d. 649 (DNJ 2017) ........................................................................9, 11

<u>Statutes and Rules</u>

17 C.F.R. §202.5 ......................................................................................*Passim*

Pursuant to Fed R. Civ. P. 65 and Local Civil Rule 65.1, by his undersigned attorneys, Guy Gentile ("Gentile") respectfully moves for a temporary restraining order and preliminary injunction enjoining the defendant United States Securities and Exchange Commission (the "SEC"), and its staff, from taking any new investigatory actions against Gentile, including the issuance of subpoenas, where the basis of the authority which the SEC relies on for its investigative action is the Formal Order Directing Investigation and Designating Officers to Take Testimony issued on November 25, 2013 in the matter captioned *"In the Matter of Traders Café, LLC"* (FL-03848) (the "Traders Café FOI").

## **PRELIMINARY STATEMENT**

This action challenges the propriety of the SEC staff's unending and retaliatory investigation into plaintiff Guy Gentile and his companies, which has been ongoing out of its Miami Regional Office since at least 2015 *without* any properly authorized Formal Order of Investigation ("FOI") from the Commission ("the Investigation"). [1]  This Investigation is *unauthorized* under 17 C.F.R. §202.5(a) and flies in the face of *SEC v. Gentile*, 2017 WL 6371301 (Dec. 13, 2017 D.N.J) ("*SEC v. Gentile*") where this Court dismissed the SEC's complaint against Gentile upon finding an absence of evidence or allegations of wrongdoing since 2008 – well beyond the applicable statute of limitations. Indeed, this Investigation encompasses the very time that the SEC has represented to this court (and the Third Circuit) on multiple occasions that the SEC is *unaware* of allegations of wrongful conduct by Gentile after 2008 – representations which were supported by (1) the SEC's knowledge resulting from its cooperation agreement with Gentile during which he fully and truthfully answered all questions posed by enforcement counsel about his Bahamian broker-dealer, and (2) information obtained during its two active investigations into Gentile.  The SEC's unauthorized conduct threatens to

---

[1] As used herein, "SEC" refers to the Division of Enforcement and its staff, while the "Commission" refers to the four-member body of commissioners appointed by the President and confirmed by the Senate.

inflict immediate, irreparable harm to Gentile if it is not enjoined now.

In recent weeks, the Miami Regional Office has accelerated the pace of its unauthorized actions in a material and impactful way.  On February 6, 2019, the office commenced subpoena enforcement actions against two third parties (located in New York and Florida), seeking to compel production of documents and testimony regarding Gentile and one of his businesses. And then, on March 4, 2019 (the day before this application was made) the SEC issued a public Litigation Release, advertising to the world that it was investigating "a foreign-based broker-dealer and its principal," explicitly referring to Gentile and his Bahamas-based broker-dealer. This press release was intended to tar Gentile as a wrongdoer, just as the obey-the-law injunction the SEC sought – but failed to obtain – in *SEC v. Gentile* was intended to do.  Indeed, this press release takes the uncommon step of publicizing a mere subpoena enforcement action (against non-parties and not targets of the investigation), something the Commission appears to have not done in any other case this year.  Even more troubling, is the publishing of these enforcement staff allegations where Gentile had already filed a lawsuit seeking an order prohibiting the SEC from continuing this unauthorized investigation.  It is as if the SEC's press release yesterday was quickly issued to inflict maximum harm to Gentile before this Court had an opportunity to rule on his cause of action.  It is this type of conduct that compels Gentile to respectfully seek expedited relief from this Court to preserve the *status quo*.

Pursuant to authority explicitly granted by Congress, and under long-standing precedent in this Circuit, the Commission may only issue a FOI authorizing it to conduct a formal investigation using subpoenas when the Commission is presented with evidence that makes "it appear[] from information obtained that there is a likelihood that a violation [of the securities laws] has been or is about to be committed…."  *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F. 2d. 118, 127 (3d Cir. 1981).  But the SEC has made no such presentation of information to the Commission regarding Gentile, and the Commission has made no such determination, other than

the different FOI underpinning the SEC's complaint in *SEC v. Gentile*.[2]  Notably, the "related" investigation out of Miami appears to have been undertaken for the explicit purpose of using any evidence obtained there to support the SEC's request for "remedies" (specifically the obey the law injunction) in *SEC v. Gentile* – and it continued even while this Court had stayed that case.

Of course, since Gentile is not violating and has not violated the securities laws, the SEC to this day has been unable to find any information "that there is a likelihood that a violation of the securities laws has been or is about to be committed."  Indeed, its enforcement staff – when ordered *by this Court* on September 18, 2017 to file an amended complaint in *SEC v. Gentile* that was to include all possible "viable" allegations tending to suggest a likelihood that Gentile was violating or would violate the securities laws – failed to allege facts that could make such a showing, and acknowledged that it was not in possession of any evidence suggesting wrongdoing other than its allegations stemming from June 2008. This has been implicitly reaffirmed in front of the Third Circuit as late as last week.

Plainly, the SEC disagreed with this Court's decision in *SEC v. Gentile*, concluding that the SEC did not allege any timely violation of any securities law.   But rather than just appeal the decision, the SEC took an additional and wholly-improper approach to challenging this Court's final decision on the matter: it simply issued subpoenas to Gentile and to individuals and companies that did business with him, premised on a formal order of investigation issued in 2013 in an unrelated case that had already concluded, for the purpose of harassing Gentile and effectively obtaining an extra-judicial industry bar. The formal order the SEC staff in Miami has relied on since August 2015 was issued in "*In the Matter of Traders Café, LLC*" (file number FL-03848) in 2013 authorizing an investigation into individuals and entities entirely unrelated to Gentile or his companies.

---

[2] That investigation was authorized by a Formal Order of Investigation entitled *In the Matter of MaxLife Fund Corp.*, NY-8307.

As set forth in detail below, neither the Traders Café FOI, nor the prosecutions or enforcement actions that resulted from it, have any connection to the Investigation of Gentile that the SEC now claims to be conducting.   According to papers the SEC recently filed in Florida, purportedly based upon the authority delegated to the staff in the Traders Café FOI, the SEC is now investigating whether Gentile, through his Bahamas-based-and-regulated broker dealer MintBroker International, Ltd. f/k/a Swiss America Securities, Ltd., was improperly soliciting US-based customers, as well as "movement of customer funds."  But – putting aside that Gentile has been operating his Bahamian broker dealer for the past four years exactly as he had been for the prior four years when the FBI and SEC knew every piece of information about his operations (and never suggested it was potentially violating any securities law) – the Traders Café FOI has absolutely nothing to do with Gentile, SureTrader, or MintBroker.  The SEC's Investigation out of the Miami Regional Office has resulted in repeated irreparable injuries to Gentile, because, among other things, several financial institutions have terminated long-standing relationships with him after receiving subpoenas regarding Trader's Cafe, most recently in February 2019. This most recent termination was likely prompted by a subpoena issued in connection with the Investigation of which Gentile is not yet aware.[3]  Moreover, the opaque reference in the March 4, 2019 press release to an inquiry into the "movement of customer funds" makes no sense without any context, and plainly serves no purpose other than to alarm customers, and is part and parcel with the SEC's efforts to force Gentile out of business by extrajudicial means.

This pattern of irregularity has occurred several times now. Indeed, one of Gentile's banks terminated its relationship with him after receiving a subpoena under the Trader's Café FOI, but in which the SEC staff attorney provided his Gmail account on SEC letterhead as

---

[3] While it is possible that this bank terminated its relationship with Gentile not because it received a subpoena directed to it but rather in response to learning about the SEC's recent filing of two special proceedings in the Southern District of Florida to compel non-parties to comply with subpoenas issued without authorization, whichever is the case, the fact remains that the unauthorized issuance of subpoenas and seeking court assistance in serving process is having an immediate, irreparable harm to Gentile.

contact information.  The use of a Gmail address on SEC subpoena issued under an irrelevant FOI by the SEC staff attorney conducting this investigation is just one indicia of the imprieprietry plaguing this investigation.[4]

Though the SEC staff here is clothed in regulatory authority, they are clearly using an irrelevant FOI, unconnected to Gentile, to trawl the oceans hoping that their nets will snare the foundation for a new formal investigation of Gentile – an individual against whom the SEC's staff harbors palpable resentment. Were counsel to a private plaintiff in a civil action to abuse her or his subpoena power in a case by issuing subpoenas to non-parties for the sole purpose of discovering a basis to bring a future case against another individual unrelated to the matter in which the subpoena power was granted, that lawyer would likely be sanctioned and the subpoenas, and any evidence obtained pursuant to them, summarily quashed.

For years Gentile was assisting the SEC in other matters, and his assistance proved quite valuable.  As the SEC admitted during oral argument before the Third Circuit in *SEC v. Gentile,* the SEC decided that Gentile's cooperation was more important to it than obtaining another tolling agreement or timely filing a lawsuit. This decision resulted in the statute of limitations expiring for the acts it had alleged Gentile committed.  The SEC received unwelcome publicity in 2017 when it tried to bring its claims too late and could not use the force of its authority to coerce a face-saving settlement from Gentile.  Undeterred by this Court's dismissal of its claims, the SEC staff has continued to publicly and privately threaten and intimate a new enforcement action against Gentile, as well as issue subpoenas to third parties without authority, in the hope that they would either stumble upon a basis for a new case, or simply keep rattling their sabers to pressure Gentile to capitulate as a cost of moving on.  Indeed, the SEC staff attorney originally conducting the investigation out of Miami has been asserting – without evidence – that he

---

[4] It cannot be ignored that this staff attorney was using his personal Gmail address to conduct this Investigation into Gentile using an unrelated FOI, during a time in our country's history when the use of personal email by a government employee was a daily news article.

personally believes Gentile has been violating the securities laws since at least April 2016 and has been "about to file a complaint against him" for the past three years. As of March 4, 2019, that personal belief has been enshrined in a press release.

Several weeks ago, the SEC became more audacious than it has been in the past several years, and commenced two special proceedings in the Southern District of Florida. Neither was brought against Gentile, but rather against a long-shuttered company that was owned and controlled by a trust (of which Gentile is a beneficiary), and against another individual, who, not coincidentally, is also an attorney that has represented and advised Gentile for years on myriad issues.

These are only the recent actions that Gentile knows about. But the SEC has almost certainly taken other actions that he does not know about, as the week after it filed its special proceedings, Gentile received a letter from the Bank of Montreal indicating that the bank was terminating its relationship with him because his businesses exceeded the bank's appetite for risk. The BMO termination was the *sixth* time that a bank or other financial institution has severed its ties with Gentile after receiving a subpoena or other communication from the SEC (but the first time since this Court dismissed the SEC's case against Gentile).

In 2017, this Court dismissed the SEC's suit to impose an obey-the-law injunction and a limited industry bar on Gentile on the grounds that those remedies were exclusively penal and would have no effect but to "stigmatize [Gentile] in the eyes of the public." Having lost that case, the SEC staff is now misusing the investigatory process themselves to stigmatize Gentile, and their efforts are causing repeated cognizable and irreparable injury to Gentile and his businesses.

The irreparable harm the SEC has caused Gentile is improper and cannot continue. Gentile does not know how many non-party subpoenas may be out there, nor whom the SEC will improperly contact next. Without urgent relief from this Court, the SEC will be free to proceed

apace and irreparably damage other relationships, or bring actions that further stigmatize Gentile in the manner that this Court previously held it had no right to do.

Therefore, pending a hearing on Gentile's motion for a preliminary injunction (which may be joined with a plenary hearing on the merits), Gentile respectfully requests that this Court temporarily restrain the SEC and its staff, from issuing any new subpoenas seeking information on Gentile or his companies, or taking any further actions pursuant to the invalid Trader's Café FOI, including issuing a press release suggesting he is engaged in misconduct.

Plaintiff's request is narrow.  Plaintiff *does not* hereby request an injunction that would impact the Commissions' ability to issue a new formal order of investigation in accordance with the CFR and applicable law.  Similarly, Plaintiff *does not* hereby request an anti-suit injunction or any other relief that would purport to frustrate the jurisdiction of the United States District Court for the Southern District of Florida.  Plaintiff intends to intervene in those recently-filed actions and seek a stay or transfer to this Court.  The temporary restraining order sought herein is narrowly tailored to prevent *further* irreparable harm that will be caused if the Investigation continues, and new subpoenas are issued, without proper authorization.

## STATEMENT OF FACTS

Three independent timelines are set forth below.  The first is of the SEC's investigation of Gentile, his cooperation with and assistance to the SEC and the Department of Justice, the DOJ's and SEC's subsequent out-of-time decisions to commence actions against Gentile (relating to his alleged activities in 2007 and 2008) shortly after Gentile ended his voluntary cooperation in 2015, and the legal proceedings that followed, which so far, have favored Gentile.

The second is of Traders Café, which was apparently an unregistered broker that existed in Florida, and its principals Albert Scipione and Matthew Ionno, each of whom pleaded guilty in 2014 to federal crimes in connection with their operation of Trades Café, LLC for the 11 months from December 2012 through October 2013.  Scipione and Ionno were investigated by

the SEC pursuant to the November 2013 Traders Café FOI looking into conduct that ended the prior year, in December 2012. (A true and correct copy of the Traders Café FOI is attached as Exhibit 1 to the March 5, 2019 Declaration of Adam Ford ("Ford Dec.")).

The third timeline gives rise to the key issue in this case. Following the conclusion of the SEC's post-guilty-plea civil enforcement action against Scipione in November 2014, and its post-guilty-plea administrative enforcement proceeding against Ionno in August 2014, in August 2015, the enforcement staff of the SEC in its Miami office recycled the Traders Café FOI for a new Investigation of Gentile by issuing a subpoena to one of Swiss America's payment processors, which clearly had nothing at all to do with Traders Café, Scipione or Ionno. (Ford Dec. Ex. 2) Over the past four years, and more intensely in recent weeks, the SEC has issued multiple improper/unauthorized subpoenas to third parties, such as banks and Gentile's business associates (including his counsel), usually providing no notice to Gentile (though he learned of many such subpoenas), and instructing several (but oddly not all) recipients to keep the existence of the subpoenas confidential. The subject matter of all such subpoenas has been Gentile and Gentile's businesses alone, and none include even a salutary request relating to Traders Café – a matter that everyone must agree is unrelated to Gentile and ended five years ago. As the facts set forth below clearly indicate, the SEC has been seeking evidence for four years now to justify a future formal and properly-sanctioned investigation of Gentile by improperly investigating him under the guise of Traders Café. Even after three plus years of this investigation, the SEC has still not uncovered any evidence to date tending to suggest Gentile is violating any securities law.

Three weeks ago, the SEC took a step it has previously not dared to: to seek judicial imprimatur on its unauthorized investigation by filing special proceedings in the Southern District of Florida against Carla Marin, Gentile's attorney, and MinTrade Technologies LLC, a trust-owned entity which Gentile does not control. (Ford Dec. Exs. 3 and 4.) These proceedings seek to compel compliance with subpoenas for documents and testimony in connection with an

"*investigat[ion of] Swiss America Securities, Ltd., formerly known as SureTrader and currently known as MintBroker International Ltd. ('Swiss America' or 'SureTrader'), a Bahamas-based broker-dealer registered with the Securities Commission of the Bahamas but not with the Commission, and its owner, Guy Gentile, in connection with potential violations of the federal securities laws (the 'Investigation').*"  (Ford Dec. Ex. 3 at 1, Ex. 4 at 1)  Neither Gentile nor MintBroker International Ltd. f/k/a Swiss America Securities, Ltd. are parties to the special proceedings in Florida, though they are the exclusive subject addressed in the subpoenas.   In the SEC's papers, the SEC admits that its investigations of Gentile and his company are premised solely upon a claim of authority arising from the Traders Café FOI.  (*Id.*)

The SEC asserts that the 2013 investigation of Traders Café revealed that the firm, while operating in 2012 and 2013, maintained an account at Swiss America Securities, Ltd. (Ford Dec. Ex. 3 at 3, Ex. 4 at 3.)   The connection starts and ends there.  The 2013 Traders Café FOI does not authorize any investigation of, or even mention, Gentile, Swiss America Securities and/or MintBroker International Ltd. (which was not even formed until 2017).  (*See* Ford Dec. Ex. 1.) The SEC makes no attempt to connect its Investigation to any of the enumerated topics in the Trader's Café FOI, relating to Traders Café, its principals, employees, partners or affiliates.

On February 22, 2019, the SEC informed the Court in Florida that this action was pending before this Court, that the relief sought by Gentile (the subject of the subpoenas in the Florida Actions) would have the effect of quashing all subpoenas issued based upon the Traders Café FOI, but that the Commission nevertheless intended to continue investigating Gentile under the Trader's Café FOI.  (Ford Dec. Ex. 5.) In that filing, the SEC indicated its refusal to agree to transfer the actions to this Court as related matters – although the SEC acknowledged that the matters were related, just as the SEC had previously represented to this Court that the Miami investigation was "related" to the SEC complaint that it filed in *SEC v. Gentile*.  On March 4, 2019, the SEC issued a press release publicly describing the nature of its investigation.  Of

course, that press release makes no mention of Traders Café, but rather leaves the unavoidable inference that the Commission has authorized an investigation into Gentile and his company. (Ford. Dec. Ex. 26)

As such, Gentile now brings this motion to preserve the *status quo*, and to ensure that any judicial decision concerning the propriety of the SEC's use of the subpoena power to investigate him and his companies based upon the wholly-unrelated Traders Café FOI is decided in an action (1) to which he is a party, (2) before the Court that has been the arbiter of the parties' years-long dispute, and (3) on an exigent basis to prevent the possibility of disparate outcomes.

### Part One – The DOJ and the SEC Investigation of Gentile, Gentile's Cooperation, and the Ultimate Dismissal of the Government's Untimely-Filed Cases

Commencing in 2010, or earlier, the SEC and the Department of Justice undertook an investigation of Gentile regarding his alleged promotion of two securities: Raven Gold Corporation in 2007 and Kentucky USA Energy, Inc. in 2007-08.  On June 25, 2012, the DOJ filed a sealed complaint.  *United States v. Gentile*, 235 F.Supp. 649, 651 (D.N.J. 2017). Approximately three weeks later, Gentile was arrested on the basis of that sealed complaint. (*Id.*)

Following his arrest, Gentile agreed to cooperate with the Department of Justice and the SEC, and executed two waivers tolling any applicable statutes of limitation, first through July 31, 2013, and later through July 31, 2014. (*Id.*, see also March 5, 2019 Affidavit of Guy Gentile ("Gentile Aff.") ¶¶ 2-5) Gentile continued to cooperate with the government after July of 2014, but refused to further toll the statute of limitations, which was set to expire on June 30, 2015. (*Id.,* Gentile Aff. ¶ 3).

Gentile cooperated with the Department of Justice and the SEC in connection with their cases against his alleged co-conspirators in the promotion of Raven Gold Corporation and Kentucky USA Energy, Inc., as well as in connection with dozens of separate investigations. (*Id.*, Gentile Aff. ¶ 4) In June of 2015, days before the expiration of the statute of limitations for

10

claims based on any conduct that occurred in 2007-2008 (accounting for the agreed tolling periods), the Department of Justice requested that Gentile plead guilty to a felony and accept a sentence of probation.  (Ford Dec. ¶ 6.)  Gentile refused, and the Department of Justice took no immediate action.  (Ford Dec. ¶ 7.)  After the period of limitations expired, Gentile ceased cooperating with the SEC and the Department of Justice – which had become a near-full-time job – but he did not sever his relationships.  (Gentile Aff. ¶ 5.)  The SEC attorneys explained during oral argument before the Third Circuit that they had decided that Gentile's cooperation was more important to them than obtaining another tolling agreement or timely filing a lawsuit.[5]

On August 17, 2015, the SEC's Miami office sent a letter to Gentile and his Bahamas-based company, Swiss America Securities Ltd., asking that it preserve any documents referring, related to, or created by Traders Café, Matthew Ionno, Albert Scipione and others related to Traders Café. (Ford Dec Ex. 6.)  The same letter also nonchalantly requested that Swiss America preserve documents created, modified or accessed by Gentile, regardless of subject matter, as well as all documents referring or relating to US-based customers of SureTrader (the trade name for Swiss America).  The significance of these particular requests was not yet apparent in the communication that otherwise appeared to relate to an investigation of Traders Café. Gentile presumed that the SEC's inquiry regarding Traders Café was another request for assistance with an ongoing investigation under his cooperation agreement.  (Gentile Aff. ¶ 6)  He was not informed that the Traders Café matter had concluded and the principals of that entity had already been convicted.  (Gentile Aff. ¶ 7)  Gentile, through his counsel, offered to meet with the SEC and provide any requested documents related to Trader's Café, requesting that the SEC's Miami office coordinate its requests through the SEC's Northeast Regional Office, with whom Gentile (through counsel) was in near constant contact, given his cooperation agreement.  Gentile

---

[5] Audio recording of the SEC v. Gentile oral argument is available at www.ca3.uscourts.gov/oral-argument-recordings.

received no further inquiries regarding Traders Café that year.  (Ford Dec. ¶ 7)

In March 2016, the Department of Justice and the SEC filed parallel actions against Gentile for conduct that allegedly occurred in 2007-2008, asserting that such claims were still timely.  (Ford Dec. Ex. 7 and 8).  The 2016 complaints contained no allegations that Gentile had committed any violation later than 2008.  The SEC's civil action was stayed pending disposition of the DOJ's criminal action.  (Ford Dec. Ex. 9)  On January 30, 2017, this Court dismissed the criminal action as untimely, and the Department of Justice ultimately declined to perfect an appeal.  *United States v. Gentile*, 235 F.Supp. 649 (D.N.J. 2017).

Prior to the dismissal of the criminal action, the United States Supreme Court granted *certiorari* in *Kokesh v. SEC*.  When the criminal action against Gentile was dismissed, the parties understood that the SEC's enforcement claims, to the extent that they sought punitive penalties against Gentile, were similarly barred.  The parties also understood that the Supreme Court's anticipated decision in the *Kokesh* case could impact Gentile's potential liability for a of the "remedial" obey-the-law injunction that was sought by the SEC.  As such, the Court maintained the stay and the parties awaited a decision.  (Ford Dec. Ex. 10)  Unbeknownst to Gentile, however, the Miami Regional Office, under the guise of the Trader's Café FOI, continued to issue subpoenas notwithstanding the stay in the New Jersey action.

After the Supreme Court issued its decision in *Kokesh*, Gentile proceeded with his motion to dismiss the SEC's action.   On December 13, 2017, (after ordering the SEC to amend its complaint) this Court dismissed the SEC's claims, holding that they were time-barred under *Kokesh*.  SEC v. Gentile, 2017 WL 6371301 (Dec. 13, 2017 D.N.J.)  The SEC appealed, and the matter is now *sub judice* in the United States Court of Appeals for the Third Circuit.

However, commencing in March 2016 and continuing through the present, the SEC has issued a panoply of subpoenas to Gentile's businesses, banks and even attorneys.  At times, the SEC has described these efforts as related to the original enforcement action, such as when the

SEC asked this Court to lift its stay of "related proceedings" so that it could conduct discovery into whether Gentile was engaged in recent conduct that could support its argument that an injunction was necessary (and in doing so publicly exposed the existence of an undescribed "nonpublic investigation" into Gentile).[6]  (Ford Dec. Ex. 11)  At other times, the SEC has portrayed its actions as unrelated to the 2016 enforcement action, focusing solely on whether Gentile was improperly soliciting US-based clients to his Bahamas-based broker-dealer.  (*See* Ford Dec. Ex. 3 at 1, Ex. 4 at 1)  As set forth in part three of this section, the SEC relied on the Traders Café FOI as the source of its authority to conduct its investigation of Gentile and his Bahamas-based business.

### Part Two – The DOJ and the SEC Investigation of Traders Café, Scipione and Ionno, the 2014 Guilty Pleas, and Subsequent Administrative Actions

According to the SEC, Albert J. Scipione and Matthew P. Ionno established Traders Café as a day-trading platform in 2012, though it was never registered as a broker-dealer.  (Ford Dec. Exs. 12 and 13)  As part of the scheme alleged by the SEC, Scipione illegally marketed the Traders Café trading platform by falsely misrepresenting to investors that Traders Café held more than $15 million in day trading accounts held by 180 customers and employed two compliance officers.  (Ford Dec. Ex. 12)  The SEC alleged that in reality Traders Café had only $367,000 in 26 customer accounts.  According to the SEC's charges, Scipione and Ionno raised over $500,000 from investors who were told that their investments would only be used for day trading and put into segregated accounts.  Instead of depositing the investors' funds into segregated accounts for day trading as promised, Scipione and Ionno misappropriated investors' funds.  (Ford Dec. Exs. 12 and 13)

Customers of Traders Café encountered technical service problems that prevented them

---

[6] Though not at issue on this motion, the action challenges the propriety of the SEC's repeated public filing of documents making a foreboding reference to an undescribed "non-public" investigation into Gentile, which is clearly done to give Gentile the same stigma, and interfere with his ability to earn a living to the same extent as if a formal obey-the-law injunction was issued against him.  In other words, the SEC is obtaining the same sanction against Gentile than the one it has sought but was denied by this Court.

from trading at all, and Scipione and Ionno squandered nearly all of the money in investor accounts for their personal use. (Ford Dec. Exs. 12 and 13)  In 2014, both Scipione and Ionno pleaded guilty to criminal violations of the securities laws, and neither challenged the SEC's subsequent civil/administrative actions against them.  (Ford Dec. Exs. 12-14)

Not one of the complaints or orders filed/issued by the Department of Justice and/or the SEC, nor any of the SEC's press releases regarding Traders Café, Scipione or Ionno, ever made a single mention of Gentile or any Gentile-related business.  (*See Id*.)  The SEC obtained a default judgment against Scipione in March of 2015 and has taken no action vis-à-vis Traders Café or its principals or employees since.   (*See* Ford Dec. Ex. 14)

***Part Three – The SEC's 2015 Investigation of Gentile, Without a Formal Order, and Contemporaneous Judicial Admissions that it Had No Evidence of Recent, Ongoing or Imminent Securities Law Violations***

Almost immediately after Gentile informed the SEC that he no longer wished to cooperate, in August 2015, and almost exactly a year after the last of the litigation regarding Trader Café had concluded, the SEC began a new line of inquiry into Gentile, his Bahamas-based company, Swiss America Securities Limited, and its brand SureTrader (a trade name of Swiss America).   (*See* Ford Dec. Exs. 2, 6)  The SEC has never fully disclosed the basis of, or its suspicions behind the new investigation, except to indicate its informal belief that a website of the Bahamian broker-dealer does not deter US-based clients conspicuously enough (a position that could easily be litigated with a printout of the website and that would require no subpoenas or further investigation).  (Ford Dec. ¶ 8)  The SEC has at times argued to this Court and the United States Court of Appeals for the Third Circuit that its amorphous investigation conducted out of the Miami office was "related" to the case it brought in this Court, because the SEC claims it could lead to evidence that Gentile had recently, or is about to violate the securities laws. (Ford Dec. Ex. 11 ¶ 16)  While the SEC has discussed this "non-public" investigation in Court on several instances, it has never suggested its investigation has any relation to the Traders Café

investigation or subsequent enforcement action, and the subject matter of the subpoenas it has issued belie any relation to Trader Café.  (*See generally* Ford Dec. Exs. 11, 16, 17 (SEC letters to this Court discussing the investigation))

In March 2016, the SEC openly admitted to Gentile's counsel that the investigation out of its Miami Regional Office nominally involving "Traders Café" – and that was founded upon its authority from the Commission to investigate Traders Café – was instead focused on Gentile and his companies as the target.  (Ford Dec. ¶ 9)

At that time, the SEC also told Gentile that the SEC Miami Regional Office was contemplating filing a civil complaint against Gentile for violating securities laws on a theory that "the foreign broker dealer exemption ha[d] been blown."  The foreign broker dealer at issue was Swiss America d/b/a SureTrader.  Three years ago, in March 2016, the SEC claimed to be in possession of "new evidence" which, it argued, supported a finding of a violation of the anti-solicitation regulations. (Ford Dec. ¶ 10)  Sajjad Matin, the SEC's lead attorney on the matter, represented at that time that the SEC staff only needed to ask Gentile a few final questions to close out the inquiry. Gentile declined to be interviewed because he was under criminal indictment at the time. The SEC never brought the action it threatened three years ago, instead, is has simply continued to issue subpoenas. (Ford Dec. ¶ 13)

SureTrader, as Bahamian broker-dealer does not now and has never solicited United States customers.  (Gentile Aff. ¶ 9-10)  All of its advertisements on the internet explicitly state that the advertisement is not intended for US persons, and the broker-dealer's website contains a pop-up which prevents access to individuals with a US Internet IP Address unless they confirm that they have not been solicited, and affirmatively contacted SureTrader on their own volition without solicitation, and request an access code. (Gentile Aff. ¶ 13; Ford Dec. Ex. 18)

The SEC and DOJ were made aware during the time of Gentile's cooperation that FINRA had already investigated the identical question of whether Swiss America/SureTrader was

improperly soliciting US clients the prior year and closed the matter without any action.  (Ford Dec. ¶ 12)  Nonetheless, on March 30, 2016, the SEC Miami Regional Office served a subpoena on Gentile re: *In the Matter of Traders Café* (FL-3848) seeking testimony on the topic of whether SureTrader was soliciting United States customers.  (Ford Dec. Ex. 19)

On June 6, 2016, the SEC Miami Regional Office inquired when Gentile would appear for testimony pursuant to the subpoena. Gentile informed the Miami Regional Office of the SEC that he would decline to answer questions during his testimony, given the criminal indictment, but would consider answering certain written questions.  (Ford Dec. ¶¶ 11, 13)  In response, and as a proposal in lieu of appearance, Mr. Matin sent an email to Gentile's counsel on July 6, 2016 asking Gentile to execute a declaration indicating a broad array of topics on which Gentile would refuse to answer questions by invoking his rights under the Fifth Amendment to the United States Constitution.  (Ford Dec. Ex 21)  The topics included nearly every imaginable line of inquiry into Swiss America Securities, Ltd. and SureTrader, but *only* mentioned Traders Café on the caption at the top of the first page. (*Id.*) Not a single topic referenced or related to Traders Café, Scipione or Ionno.  Gentile's counsel responded to the email, noting that the proposed declaration was improper, as there were many subjects on which Gentile would have been willing to provide written answers to questions.  (Ford Dec. Exs. 20, 21)

In January 2017, this Court dismissed the criminal indictment against Gentile.  *U.S. v. Gentile*, 235 F. Supp. 3d. 649 (DNJ 2017).  Following the termination of the parallel criminal action, this Court issued an order directing that the SEC's civil case in New Jersey "shall remain stayed pending" a scheduled court conference.  On April 12, 2017, following the conference, the Court issued another order, again maintaining the stay "pending further Order of the Court," and in consideration of the filing of a notice of appeal, which the Government declined to take.  After another round of letters, the Court "continue[d] the stay in this matter" until the Supreme Court issued its opinion in *Kokesh*.  (Ford Dec. Ex. 22)

16

By letter dated April 26, 2017, the SEC argued that the stay should be lifted because it intended to seek a remedial injunction against Gentile.  In the letter, the SEC disclosed the existence of a "non-public" investigation purportedly "arising out of Mr. Gentile's operation of his Bahamian broker dealer."  (Ford Dec. Ex. 11)  The SEC did not inform this Court that it was relying on an unrelated Formal Order of Investigation as a basis to conduct the "non-public" investigation (which it announced in a publicly-filed letter).  The SEC specifically argued that its Miami Regional Office's investigation was "related" to the conduct alleged in the SEC complaint then pending before this Court.  (*Id*.)

On May 25, 2017, Gentile filed a letter with this Court, arguing that the SEC should not be allowed to serve investigative subpoenas for its "related" case in Miami during the time period that the related case in New Jersey was stayed, particularly since the SEC had indicated that it intended to ultimately use those materials in the action in New Jersey.   In response, the SEC filed another letter with this Court that same day, arguing that the Commission's investigation into Gentile out of the Miami Regional Office may be relevant to the "issues of relief in this case" "including the propensity for future misconduct given that Mr. Gentile's conduct is the focus of this litigation and a focus of the separate ["related"] investigation."  (Ford Dec. Exs. 23, 17)  The Court did not lift the stay.

Undeterred, on July 21, 2017, the SEC Miami Regional Office served a subpoena seeking assistance from the Securities Commission of the Bahamas for documents possessed by Gentile's Bahamian broker-dealer, Swiss America d/b/a SureTrader, for the SEC investigation into Traders Café.  (Ford Dec. Ex. 24.)  Swiss America cooperated with the request from the Securities Commission of the Bahamas. (Gentile Aff. ¶ 11)

Between June 30 and December 8, 2017, the parties briefed Gentile's motion to dismiss the SEC's complaint on statue of limitations grounds.

Notwithstanding the stay, during or prior to September 2017, the SEC subpoenaed Key

17

Bank and (possibly) Citibank – both institutions where Gentile routinely conducted banking for his broker-dealer business – once again purportedly in connection with an investigation titled "*In the Matter of Traders Café*" but asking for documents relating to Gentile and his companies. (Ford Dec. Ex. 15; Gentile Aff. ¶ 13) After receiving the SEC subpoenas, and likely as a result thereof, both banks decided to close all bank accounts related to Gentile and his companies. (Ford Dec. Exs. 25-26, Gentile Aff. ¶¶ 14, 15)  The fact that those accounts were closed seriously compromised Gentile's ability to run his broker-dealer establishments.  (Gentile Aff. ¶ 11)

On September 18, 2017, this Court dismissed the SEC's complaint without prejudice, and entered an order requiring the SEC to file an Amended Complaint, which both alleged any possible wrongdoing by Gentile, and clearly and succinctly stated why the Commission believed that Gentile's conduct subjecting him to an injunction was not barred by the statute of limitations.  (*SEC v. Gentile*, Dkt. 46, Opinion and Order dated September 18, 2017)  The Court specifically asked that the SEC include any new information in its Amended Complaint since the Commission included an assertion in its brief that the SEC believed it had examples "concerning certain conduct that Mr. Gentile has engaged in after January 2017 that are not asserted in the complaint and would provide a basis for the SEC to obtain an injunction against future violations of the securities laws." (*Id.*)

That same day, September 18, 2017, the SEC Miami Regional Office sent a subpoena via email to Gentile's personal attorney, Carla Marin, again seeking her testimony.  In a subsequent email regarding the subpoena, the SEC staff attorney made clear that he had no questions regarding Traders Café, but rather stated: "We were given your name as someone who might have information pertaining to Swiss America Securities Limited, an entity registered in the Bahamas and doing business as SureTrader.com.  If you have no knowledge or information related to Swiss America, SureTrader.com, or is operations, we can accept an affidavit such in

18

lieu of your testimony." (Ford Dec. Ex. 27)  The attached subpoena was dated September 1,

2017.  Clearly, this subpoena had a single goal: to search for evidence that could be used to

support the SEC's forthcoming amended complaint.   But once again, the basis of authority the

SEC relied on was the Traders Café FOI.  (*See Id*.). It was also issued in violation of this Court's

stay order.

In accordance with this Court's Order, on October 6, 2017, the SEC filed an amended

complaint in its enforcement action in which it alleged as wrongdoing all "conduct that Mr.

Gentile has engaged in after January 2017 that would provide a basis for the SEC to obtain an

injunction against future violations of the securities laws."  (Ford Dec. Ex. 28)  The SEC's

amended complaint contained no allegations of any new violations, just those alleged to have

occurred in 2007 and 2008.  The SEC sought to justify its claim for an obey-the-law injunction

and a limited industry bar by virtue of: (1) Gentile's alleged conduct in 2007 and 2008 (which

Gentile denied); (2) Gentile's lack of contrition for his actions in 2007 and 2008 (though he had

denied the misconduct); (3) Gentile's failure to provide "assurances" that he will not violate

securities laws in the future; (4) its claim that Gentile had made arguably disparaging comments

regarding the SEC[7] and its actions against him in multiple public fora; and (5) the fact that

Gentile (was) operating a regulated foreign brokerage company that he plans to expand,

according to a newspaper article from 2014.   (*Id*.)

While awaiting this Court's decision, on November 15, 2017, the SEC again subpoenaed

Gentile's attorney, Carla Marin, again purportedly in connection with the Traders Café

investigation.  (Ford. Dec. Ex. 29)  Marin informed the SEC Miami Regional Office that she

would not testify absent a court order compelling her to testify, and that she intended to fight any

enforcement action filed that sought to compel her testimony.  (Ford Dec. ¶ 14)  On December 6,

2017, the SEC served Marin with a third subpoena, this time seeking documents. (Ford Doc. Ex.

---

[7] In its December 2017 Opinion, this Court characterized Gentile's comments about the SEC as "shrewd."

30)  As with all of the Miami Office's actions, this subpoena was once more premised on authority from the Traders Café FOI, but instead sought documents about Swiss America, Mint Custody (a related company) and Guy Gentile.  None of the categories of documents requested had any connection to Traders Café.  Marin never complied, and the SEC never sought to enforce these subpoenas.

On December 13, 2017, this Court issued its opinion that the Commission had made no allegations against Gentile suggesting he engaged in a violation of the securities laws within the past five years or was likely to do so. *SEC v. Gentile*, at *3.  The SEC has continued to argue in briefs to the Third Circuit Court of Appeals *as late as February 26, 2018* that Gentile should be subject to an injunction and industry bar for conduct he allegedly engaged in from 2007 through 2008, but the agency has at no time asserted that its now nine-year-old investigation into Gentile out of Miami has yielded any evidence that he engaged in any knowing violation of the securities laws since that time, or indicating that he would likely do so in the future (other than the insufficient allegations of its amended complaint).

The subpoenas sent to individuals and banks associated with Gentile have caused significant harm to him and his companies:

- After the SEC served a subpoena on Tipalti, a payment processor, Tipalti severed its relationship with Gentile in August 2015.  (Ford Dec. Exs. 1, 31);

- After the SEC served a subpoena on Key Bank, where Swiss America held accounts, Key Bank severed its relationship in March 2016.  (Ford Dec. Exs. 26, 32);

- After the SEC served a subpoena on Citibank, where a trust established for the benefit of Gentile and his children held accounts, Citibank severed its relationship in April 2016.  (Ford Dec. Ex. 25; Gentile Aff. ¶ 15);

- After the SEC served a subpoena on Checkbook.io, an ACH Processor, Checkbook severed its relationship in May 2017.  (Ford Dec. Ex. 33; Gentile Aff. ¶ 16);

- After the SEC served a subpoena on J.P Morgan Chase, where Gentile held personal accounts, Chase severed its relationship in January 2017.  (Ford Dec. Ex. 34; Gentile Aff. ¶ 16);

- After the SEC served a subpoena on the Bank of Montreal, where MintBroker International held busines accounts, the Bank of Montreal severed its relationship in February.  (Ford Dec. Ex. 35)

The most recent termination by the Bank of Montreal is the first such event since this Court

dismissed both the Department of Justice's and SEC's cases against Gentile, and suggests (along

with the recent court filings in Florida) that the SEC is renewing it unauthorized campaign

against him and his companies.

Throughout 2017 and 2018, the SEC Miami Office repeatedly informed Gentile's counsel

that it was on the precipice of filing an enforcement action against Gentile purportedly based on

a finding that SureTrader was soliciting United States customers. (Ford Dec. ¶ 15)

Recently, there has been an escalation.  On November 26, 2018, the SEC served a fourth

subpoena on Carla Marin for documents, again on the basis of the Traders Café FOI, and again

having nothing to do with Traders Café.   (Ford Dec. Ex. 3)  On December 12, 2018, the SEC

served its subpoena on Mintrade Technologies.  (Ford Dec. Ex. 4)

On February 6, 2019, the SEC commenced two special proceedings in the Southern

District of Florida to compel compliance with subpoenas served in Mintrade Technologies and

Carla Marin.  (Ford Dec. Exs. 3, 4)  As noted above, on February 7, 2019, the Bank of Montreal

prepared a notice of termination which Gentile received on February 13, and which was the clear

result of yet another improper and unauthorized subpoena.   Finally, on March 4, 2019, the SEC

issued a press release intended to make public its "non-public" investigation into Gentile and his

company for the purpose of harming his business.  (Ford. Dec. Ex. 26.)

## ARGUMENT

To obtain a preliminary injunction, a movant must "show (1) a likelihood of success on

the merits; (2) a greater-than-even chance of irreparable harm without a preliminary injunction;

(3) a favorable balance of equities; and (4) the public interest favoring the injunction.  *Heartland*

*Payment Sys., LLC v. Volrath*, 18-1155, 2019 WL 413759, at *2 (3d. Cir. Feb. 1, 2019).

I.      **Gentile is Likely to Succeed on the Merits**

The merits of this action, at least as it relates to the relief sought herein, come down to two independent questions: (1) Does the 2013 Traders Café FOI authorize the staff of the SEC to conduct a plenary investigation of Gentile and his company in connection with conduct that may have occurred in the past five years, and, if not (2) may the staff of the SEC nonetheless conduct a plenary investigation of Gentile and his company by issuing subpoenas and seeking to compel process through the courts without an authorized formal order of investigation? Both must be answered in the negative.

A.      **The SEC Cannot Issue Subpoenas for Documents or Testimony to Investigate Gentile, or any Target, Without Authorization from the Commission in a Formal Order**

For the SEC Division of Enforcement to obtain the proper authority to conduct any formal investigation where it may issue judicially-enforceable subpoenas, it must make a showing to the Commission of a likelihood that a target had or was about to violate the securities laws. *Wheeling-Pittsburgh Steel Corp.*, 648 F.2d at 130 (holding that targets of investigations are "entitled to a decision by the SEC itself, free from third-party political pressure, that a 'likelihood' of a violation exists and that a private investigation should be ordered.")  This requirement is echoed in 17 C.F.R. 202.5(a) which governs the SEC's enforcement activities.

The fact that there can be no investigation of a target (featuring subpoenas) absent a formal order of investigation issued by the Commission pursuant to 17 C.F.R. 202.5(a) authorizing investigation of that target is not disputed.  The SEC has, for years now, claimed that its Investigation was properly authorized by the Traders Café FOI.  They have never asserted that they could investigate Gentile or his companies absent a formal order from the Commission.

B.      **Every Subpoena Issued in the SEC's New Investigation Is Not Reasonably Relevant to an Authorized Investigation**

The SEC admits in its papers in Florida that for a subpoena to be valid, it must be "reasonably relevant to an authorized investigation." (SEC Motion to Compel in Marin

Proceeding at 12 (Ford Dec. Ex. 3) citing *EEOC v. Tire Kingdom, Inc*., 80 F.3d 449, 450 (11th

Cir. 1996); *EEOC v. Technocrest Sys*., 448 F.3d 1035, 1040 (8th Cir. 2006).  Plaintiff does not

dispute this position as a matter of law. The Division of Enforcement cannot define the scope of

an investigation on its own, and then argue a subpoena is "reasonably relevant to" that

investigation.   The investigation against which relevance is measured must be the investigation

authorized and defined by the Commission in the order it issues under 17 C.F.R. 202.5(a).  In

this case, the only authorized investigation is the 2013 investigation of Traders Café.  Any

subpoena the SEC may issue under the caption "*In the Matter of Traders Café, LLC*" (FL-03848)

can only be enforced if it is reasonably relevant to the investigation defined in the Traders Café

FOI.

1.     *The Traders Café FOI is stale*

The Traders Café investigation has been over for four years.  Court filings and SEC press

releases make that clear.  The Traders Café FOI, and related press releases, describe conduct that

occurred in 2012 and 2013.  The only individuals charged were the principals, Scipione and

Ionno.  Neither contested the criminal, civil or administrative cases against them.  The fact that

the case has been investigated, charges have been brought, and all litigation has run its course is

itself conclusive evidence that the Traders Café FOI cannot now be relied upon by the SEC staff

to investigate any new matters.

2.     *The Traders Cafe FOI never authorized or contemplated an investigation of Gentile or his companies*

More critically, the language of the Traders Café FOI explicitly details the targets of the

investigations.  While the subject matter is broad, it is not unlimited.  The Traders Café FOI

covers: (1) selling unregistered securities in violation of Sections 5(a) and 5(c) of the Securities

Act of 1933; (2) acting as an unregistered broker dealer; or (3) committing fraud by individuals

related to Trader's Cafe.   The Traders Café FOI says nothing about investigating the marketing

activities of a licensed and regulated foreign broker-dealer to determine if they have improperly

23

solicited US-based clients, which is the focus of the Gentile Investigation.

In addition, the Traders Café FOI limits the investigation to Traders Café, it officers, directors, employees, partners or other individuals working on its behalf.   The Traders Café FOI does not authorize Sajjad Matin or others to investigate any individual in the country for possible violations of the securities laws.   There must be a "reasonabl[e] relevan[cy]" to Traders Café.

Because the Traders Café investigation (as defined by the Traders Café FOI) is not reasonably connected to the new Investigation of Gentile in terms of time frame, targets and subject matter, the Traders Café FOI does not suffice as authority for any subpoena issued in connection with the new Investigation.

## II.     Gentile is Irreparably Harmed Each Time the SEC Subpoenas a Third Party to Provide Documents or Testimony About Him or His Businesses Without a Proper Basis to Do So

The subpoenas sent to individuals and banks associated with Gentile and his businesses have caused significant harm to him and his companies.  To date, Gentile is aware of five separate instances where the following scenario has played out:  First, the SEC staff sends a subpoena to a financial institution that captioned "*In the Matter of Traders Café, LLC*" (SEC Inv. FL-03848) but that requests documents relating solely to Gentile and/or Swiss America Securities, Ltd. or MintBroker International, Ltd.  Second, the financial institution not only complies with the subpoena but also terminates its relationship with Gentile and the company. As shown in the exhibits to the Ford Declaration, this has occurred on at least five separate occasions, always without advance warning, and as recently February 2019.

As set forth above, *six* separate financial institutions have formally severed their relationships with Gentile or his businesses.  (Ford Dec. Exs. 25, 26, 31, 33, 34, 35.)  In addition, Gentile's businesses have lost clients and referral sources, following receipt of SEC subpoenas. (Gentile Aff. ¶ 19.)  The SEC staff has repeatedly issued unauthorized subpoenas regarding Gentile and his companies to financial institutions and others without warning or even providing

24

notice to Gentile.  Indeed, the SEC's filing in Florida details four such subpoenas to Carla Marin alone.

These terminations are irrefutable proof that the stigmatization caused by the unauthorized subpoenas has caused, and will continue to cause, irreparable harm.  Gentile cannot be made whole by a money damages award, as the value of his relationships with the financial institutions and other companies he depends on for his business and personal needs is not subject to valuation.   Notwithstanding this Court's ruling preventing the SEC from obtaining relief against Gentile that would serve no purpose but to stigmatize him, the impact of the SEC staff's unauthorized Investigation is to blacklist Gentile.  Only a finite number of institutions that are appropriate partners for Gentile's business.  As the SEC's actions eliminate options and force him to continually move accounts, Gentile is repeatedly and irreparably harmed.

The next termination is just one unauthorized and undisclosed subpoena away.  Unless this Court acts, it will happen again, just as before, with no warning, and given the SEC's conduct these past few months, it could be imminent.  Moreover, the SEC's initiation of special proceedings in Florida, combined with the Bank of Montreal's nearly simultaneous termination of its relationship with Gentile, clearly indicates that the SEC is accelerating the pace of its Investigation.

## III.   The Commission Will Not Be Harmed by an Injunction that Merely Prevents its Enforcement Staff from Failing to Adhere to Well-Established Procedural Requirements

The Commission will not be harmed if this injunction issues because the SEC staff is obligated to obtain a formal order of investigation prior to issuing subpoenas in an investigation. The injunction that Gentile is seeking here is merely seeking an order compelling the SEC to follow the law.  Gentile is not suggesting that the SEC cannot obtain a formal order of investigation into his conduct if the SEC is in possession of the minimal threshold of evidence required.  Moreover, the SEC will not be harmed by an injunction since the SEC has no valid

reason to advance this investigation in a timely manner (given the purpose is to harass not to investigate). Indeed, the SEC has been investigating Gentile since at least 2012 out of its Northeast Regional Office and since at least August 2015 out of its Miami Regional Office. SEC Staff counsel have asserted since at least March 2016 that they believed Gentile's broker dealer has been soliciting United States customers, despite total absence of evidence supporting this allegation. Nevertheless, even by the SEC's own admissions, there is no immediacy to its inquiry into Gentile or his broker dealer. The SEC has obviously not taken any action against Gentile since March 2016 when Mr. Matin asserted – without evidence – that the foreign broker dealer exemption has been blown. As such, there will be no harm to the SEC if this injunction is issued.

## IV.    The Public Interest Will Be Served by a Narrowly-Tailored Injunction

### A.    The SEC Has Recently Admitted to this Court, and the United States Court of Appeals for the Third Circuit, that It Has no Information that Gentile or any of His Companies Engaged, Are Engaging or Are About to Engage in Conduct that violates the Securities Laws

Despite nearly a decade of investigations into Gentile, the SEC submitted a letter to the Third Circuit just last week, again arguing that it should be entitled to obtain an injunction against Gentile based on conduct dating back from eleven years ago. Despite numerous opportunities to argue before this Court and the Third Circuit that it is currently in possession of information suggesting Gentile is violating the securities laws or is on the precipice of doing so, it has failed to make such allegations at every turn. The reason is simple: Gentile was not, is not, nor is imminently about to violate any securities laws now or in the future.

### B.    The Public Interest Is Served by an Injunction that Prevents the Staff of the Division of Enforcement from Taking Consequential Actions Without Obtaining Proper Authority from the Commission Under 17 C.F.R. 202.5(a)

The public interest can best be served by compelling SEC staff attorneys to abide by their congressional mandate and not conduct investigations using the courts to assist in compelling

process without a duly authorized formal order of investigation.

**V.      The Court Should Enter a Temporary Restraining Order Pending a Hearing on this Motion**

A temporary restraining order issued with notice, [as is the case here], may be treated as a preliminary injunction.  *Bragg v. Tuccillo*, CV 16-8628-BRM-LHG, 2017 WL 5565671, at *4 (D.N.J. Nov. 20, 2017) citing *NutraSweet Co. v. Vit-Mar Enters., Inc*., 112 F.3d 689, 693 (3d Cir. 1997).  The questions of likelihood of success on the merits, the balancing of harms and the public interest are identical.   The only potential distinction lies in that a temporary restraining order covers the time that may elapse between the brief presentation that the parties make to the Court, and the Court's determination of the preliminary injunction on a fully-briefed record. The applicant for a temporary restraining order should be able to show that the circumstances relied on to show immediate and irreparable harm are just as pressing and present during the short time between the application and the Court's ruling on the fully-briefed motion.  However, given the nature of the immediacy requirement, in a case where such relief is warranted, it is just as needed the day the application is filed as it is the day the court issues a full opinion.

As noted above, the SEC staff has repeatedly issued unauthorized subpoenas regarding Gentile and his companies to financial institutions without warning or even notice to Gentile.  In five separate instances, including one in February 2019, those institutions have terminated their relationships with Gentile or his companies.  These terminations are irrefutable proof that the stigmatization caused by the unauthorized subpoenas has caused, and will continue to cause, irreparable harm.

Until this Court can issue an opinion on the instant motion for a preliminary injunction on a full record, the SEC should be temporarily restrained from issuing any further subpoenas for documents or testimony in connection with its Investigation of Gentile or his companies based upon a claim of authority under the Traders Café FOI.

## **CONCLUSION**

For the foregoing reasons, the Court should issue a preliminary injunction prohibiting the SEC from taking further actions to investigate Gentile or any of the companies based on the Traders Café FOI for the duration of this action, and until entry of a permanent injunction.

Dated: March 5, 2019

Respectfully submitted,

FORD O'BRIEN LLP

_____
Adam C. Ford
Robert S. Landy (*pro hac vice* pending)
575 Fifth Avenue
17th Floor
New York, NY 10017
(212) 8580-040
aford@fordobrien.com
rlandy@fordobrien.com

*Attorneys for Plaintiff*