# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUY GENTILE,<br><br>                Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>                Defendants. | Civil Action No.: 19-5155 (JLL) (JAD)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Guy Gentile's *ex parte* application for a temporary restraining order ("TRO") and motion for a preliminary injunction against Defendant Securities and Exchange Commission ("SEC"). (ECF No. 5). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Plaintiff's motion for a TRO and directs the SEC to respond to Plaintiff's arguments in favor of a preliminary injunction.

## I.    BACKGROUND[1]

On February 8, 2019, Plaintiff filed this action for declaratory and injunctive relief to prevent an ongoing investigation into his activities conducted by the Miami Regional Office of the SEC. (Compl. ¶ 1). Since around August of 2015, Plaintiff has been aware of an SEC investigation out of the Miami Regional Office into whether Plaintiff and his Bahamas-based broker-dealer,

---

[1] This background is derived from allegations in the Complaint, (ECF No. 1 ("Compl.")), which the Court accepts as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

SureTrader, improperly solicited United States customers. (Compl. ¶¶ 27, 36–37, 88).

The Florida SEC investigation relies on a formal order of investigation ("FOI") dated November 5, 2013 entitled "In the matter of Traders Café, LLC," which authorizes an investigation into individuals related to an entity called Traders Café. (Compl. ¶ 2). The Traders Café FOI "makes no reference to [Plaintiff] or anyone or anything related to him." (Compl. ¶ 2). Indeed, Plaintiff alleges that there is no connection whatsoever between Traders Café and Plaintiff's Bahamian broker-dealer, other than the fact that Traders Café maintains or maintained an account at Plaintiff's broker-dealer. (Compl. ¶¶ 2, 27, 30). Plaintiff therefore argues that the Traders Café FOI is an improper basis for an investigation into Plaintiff and his broker-dealer, and that the SEC Miami Regional Office lacks the necessary authority to proceed or to enforce existing subpoenas absent a proper FOI. (Compl. ¶¶ 1–3, 33). Accordingly, Plaintiff's action seeks "to quash several subpoenas and any evidence obtained through them that [were] served . . . pursuant to the Traders Café FOI." (Compl. ¶ 5). He also seeks "a declaration ordering the SEC to cease its unauthorized 'investigation.'" (Compl. ¶ 5).

Plaintiff further alleges that the Florida investigation is an attempt by the SEC to revive claims against Plaintiff that were dismissed by this Court in 2017. (Compl. ¶¶ 60–61). The Court writes for the parties and assumes familiarity with the facts underlying the prior SEC civil enforcement proceedings against Plaintiff before this Court, but a brief summary is provided to the extent the facts are relevant to the instant TRO application. In March of 2016, the SEC Northeast Regional Office filed a complaint against Plaintiff seeking equitable relief in connection with two penny stock manipulation schemes. *SEC v. Gentile*, No. 16-1619, 2017 WL 6371301, at *1 (D.N.J. Dec. 13, 2017). On December 13, 2017, this Court dismissed the SEC's complaint, concluding that the action was barred by a five-year statute of limitations under 28 U.S.C. § 2462.

*Id.* at *4. The SEC appealed that decision, which remains under review by the Third Circuit. *See SEC v. Gentile*, No. 18-1242 (3d Cir., filed Feb. 2, 2018). Plaintiff alleges that the SEC is using the Florida investigation as a pretext to gather additional information to further its case in New Jersey and to overcome the statute of limitations. (Compl. ¶¶ 60–61). He also argues that, to the extent the Florida investigation was ongoing during periods when the New Jersey enforcement proceedings were stayed, any subpoenas issued during that time violated the stay. (Compl. ¶ 62).

On February 6, 2019, the SEC Miami Regional Office filed two actions in the United States District Court for the Southern District of Florida to enforce subpoenas issued to Carla Marin, Plaintiff's personal attorney, (Compl. ¶ 78), and MinTrade Technologies, LLC, seeking testimony and documents related to Plaintiff and his Bahamian broker-dealer. (Compl. ¶ 94); *see also SEC v. Marin*, No. 19-20493 (S.D. Fla., filed Feb. 6, 2019); *SEC v. MinTrade Techs., LLC*, No. 19-20496 (S.D. Fla., filed Feb. 6, 2019). These Florida enforcement proceedings prompted Plaintiff's initiation of this action two days later. (Compl. ¶ 94). On March 4, 2019, the SEC issued Litigation Release No. 24415, publicly announcing the enforcement actions against Marin and MinTrade Technologies. (ECF No. 5-28). The Litigation Release describes the subpoenas as seeking documents and testimony "related to activities conducted by a foreign-based broker-dealer and its principal concerning potential violations of the federal securities laws involving solicitation of U.S.-based customers and the movement of customer funds." (ECF No. 5-28).

Plaintiff filed the instant TRO application one day after the SEC issued the Litigation Release. (ECF No. 5). Plaintiff argues that the language in the Litigation Release "explicitly refer[s] to [Plaintiff] and his Bahamas-based broker-dealer." (ECF No. 5-40 ("Mov. Br.") at 5). Plaintiff claims that the release "was intended to tar [Plaintiff] as a wrongdoer" and to "inflict maximum harm to [Plaintiff] before this Court had an opportunity to rule on his cause of action."

3

(Mov. Br. at 5). Plaintiff argues that the ongoing Florida investigation is intended only to harass him, to blacklist him in his business community, and to circumvent this Court's 2017 dismissal of the SEC's claims of penny stock manipulation. (Mov. Br. at 6, 28). Plaintiff therefore asks this Court for immediate intervention to stem the ongoing stigmatization and loss of business that has resulted from the Florida investigation. (Mov. Br. at 9–10). "[P]ending a hearing on [Plaintiff's] motion for a preliminary injunction . . . , [Plaintiff] respectfully requests that this Court temporarily restrain the SEC and its staff[] from issuing any new subpoenas seeking information on [Plaintiff] or his companies, or taking any further actions pursuant to the . . . Traders Café FOI, including issuing a press release suggesting he is engaged in misconduct." (Mov. Br. at 10).

## II. **LEGAL STANDARD**

Preliminary injunctions and TROs are extraordinary remedies that are not routinely granted. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The decision to grant preliminary injunctive relief is within the sound discretion of the district court. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In deciding whether injunctive relief should be granted, the Court must determine (i) that the movant has a reasonable likelihood of success on the merits; (ii) that the denial of injunctive relief will result in irreparable harm to the movant; (iii) that granting injunctive relief for the movant will not result in even greater harm to the non-movant; and (iv) that the public interest favors granting the preliminary injunction. *Kos Pharm.*, 369 F.3d at 708 (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)).

In the Third Circuit, "a TRO or preliminary injunction will issue only when the movant produces evidence sufficient to convince the court that all factors favor preliminary relief." *Chadda v. Bd. of Elections*, 222 F. App'x 147, 149 (3d Cir. 2007). While a district court is required

to balance these four factors, the Third Circuit has held that a court may not enter a preliminary injunction where the plaintiff has not carried its burden of meeting the likelihood of success on the merits *or* irreparable injury prongs. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury[] must necessarily result in the denial of a preliminary injunction."). To that end, the Court first considers whether Plaintiff has shown irreparable harm.

### III. ANALYSIS

The Court finds that Plaintiff has failed to demonstrate a "clear showing of immediate irreparable injury" in the absence of a TRO. *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)). Plaintiff argues that, as a result of the Florida investigation and related subpoenas, "*six* separate financial institutions have formally severed their relationships with [Plaintiff] or his businesses," and that those "terminations are irrefutable proof that the stigmatization caused by the [SEC's issuance of] unauthorized subpoenas has caused, and will continue to cause, irreparable harm." (Mov. Br. at 27–28). Evidence that several financial institutions have already terminated their relationships with Plaintiff shows only past harm of the kind that may be redressed by an award of monetary damages. The Third Circuit has long distinguished between a showing of immediate irreparable harm, which justifies the issuance of a preliminary injunction, and circumstances in which "other remedies such as money damages are adequate to compensate a plaintiff for past harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). A preliminary injunction or TRO "must be the *only* way of protecting the plaintiff from [the alleged] harm" for a movant to satisfy this factor. *Id.* (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882

F.2d 797, 801 (3d Cir. 1989)). Here, a TRO will merely maintain the status quo; it will not compensate Plaintiff for the business relationships he alleges to have lost as a result of previously issued subpoenas.

To the extent Plaintiff raises the prospect of future harm, those allegations are speculative. The Third Circuit has long "insisted that the risk of irreparable harm must not be speculative" in order for a district court to issue a TRO or preliminary injunction. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). Plaintiff argues that, "[w]ithout urgent relief from this Court, the SEC will be free to proceed apace and irreparably damage other relationships[] or bring actions that further stigmatize" Plaintiff. (Mov. Br. at 9–10). While Plaintiff asserts that the next financial institution to terminate its relationship with him "is just one . . . subpoena away," he nevertheless acknowledges that he "does not know how many non-party subpoenas may be out there, nor whom the SEC will . . . contact next." (Mov. Br. at 28, 9). These allegations of future harm are speculative by their very nature. They do not suggest "a significant risk that [Plaintiff] will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams*, 204 F.3d at 484–85; *see also ECRI*, 809 F.2d at 226 (noting that "[e]stablishing a risk of irreparable harm is not enough" and that a movant must prove a "clear showing of immediate irreparable injury").

Furthermore, Plaintiff has failed to demonstrate that any future harm would not be adequately addressed by an award of monetary damages. In the Third Circuit, "the requisite feared injury or harm must be *irreparable* not merely serious or substantial." *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977) (emphasis added). In other words, "[i]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Cont'l Grp.*, 614 F.2d at 359. Plaintiff argues that he "cannot be made whole by a money damages award, as the

value of his relationships with the financial institutions and other companies . . . is not subject to valuation . . . [because] only a finite number of institutions . . . are appropriate partners for [Plaintiff's] businesses." (Mov. Br. at 28). However, at this stage, Plaintiff has not sufficiently explained why any financial harm associated with lost business caused by continued SEC investigation could not be quantified in the future. The Court therefore concludes that Plaintiff has not shown that his business interests are of such a "peculiar nature . . . that compensation in money cannot atone" for the potential loss. *Glasco*, 558 F.2d at 181.

Because Plaintiff has failed to meet his burden of demonstrating immediate, irreparable harm in the absence of a TRO, his application for a TRO must be denied, and "there is no need to analyze the other prongs of the test." *Bennington Foods LLC v. St. Croix Renaissance Grp.*, 528 F.3d 176, 179 (3d Cir. 2008); *see also Kamden–Ouaffo v. Plaza Square Apartments*, No. 17-1068, 2017 WL 936632, at *1–2 (D.N.J. Mar. 7, 2017) (denying TRO application where movant "failed to demonstrate that he will be subject to irreparable harm upon denial" of the application, without discussing the other three factors); *MHA, LLC v. Siemens Healthcare Diagnostics, Inc.*, No. 15-1573, 2015 WL 9304543, at *5 (D.N.J. Dec. 21, 2015) (lifting TRO in the absence of a showing of irreparable harm, without discussing the other factors).

### IV.     CONCLUSION

For these reasons, Plaintiff's application for a TRO is denied. The parties are directed to submit briefing on Plaintiff's arguments in favor of a preliminary injunction on an expedited schedule. An appropriate Order accompanies this Opinion.

DATED: March 8th, 2019

/s/ Jose L. Linares

JOSE L. LINARES
Chief Judge, United States District Court