Samuel M. Forstein, Assistant General Counsel
Matthew S. Ferguson, Senior Counsel
U.S. Securities and Exchange Commission
Office of the General Counsel
100 F Street NE
Washington, DC 20549
Tel.: 202-551-5139 (Forstein)
Tel.: 202-551-3840 (Ferguson)
Fax: 202-772-9263
ForsteinS@sec.gov
FergusonMA@sec.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUY GENTILE,<br><br>          Plaintiff,<br><br>          v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>          Defendant. | Hon. Jose L. Linares<br><br>Civil Action No. 19-5155 |

**SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM
(1) IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND (2) IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT ................................................................................................................... 14

    **I.**   **This Court Lacks Subject Matter Jurisdiction Over Gentile's Complaint** ................ 14

        *A.*  *Gentile Has Not Identified a Waiver of Sovereign Immunity that Authorizes This Action* ................................................................................................................... 14

            1.   The Federal Jurisdiction Statute, the Declaratory Judgment Statute, and Section 21 of the Exchange Act Do Not Waive Sovereign Immunity ................................... 15

            2.   The APA Does Not Waive Sovereign Immunity Here ............................. 16

                a.   Gentile's Claim Does Not Fall Within Section 704 .............................. 16

                b.   Gentile's Claim Does Not Satisfy Section 702 of the APA Because 15 U.S.C. § 78u(c) Provides an Exclusive Mechanism to Challenge an Investigation and Because the Action at Issue is Committed to Agency Discretion ................................. 18

        *B.*  *The Court Should Dismiss this Matter in Recognition of the First-Filed Cases in the Southern District of Florida* ..................................................................... 20

    **II.**   **Gentile Has Not Asserted A Proper Basis for Venue in This Court** ...................... 25

    **III.**  **Gentile Fails to State a Claim Upon Which Relief Can Be Granted** ...................... 26

    **IV.**  **Gentile Is Not Entitled to a Preliminary Injunction** ................................. 30

        *A.*  *Gentile Cannot Show a Likelihood of Success on the Merits of His Claim* ................. 31

        *B.*  *Gentile Cannot Show Irreparable Harm* ........................................................ 31

    **CONCLUSION** ........................................................................................................ 36

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000) ................................................30, 32

*Andrus v. Charleston Stone Prods. Co.,* 436 U.S. 604 (1978) .....................................................18

*In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137 (3d Cir. 1982) ..................................30

*Arjent LLC v. SEC*, 7 F. Supp. 3d 378 (S.D.N.Y 2014)....................................................16, 18, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................26

*AVCO Financial Corp. v. Commodity Futures Trading Comm'n*, 929 F. Supp. 714 (S.D.N.Y 1996) ................................................................................................................................33

*Baker v. United Stat*es, 817 F.2d 560 (9th Cir.1988), *cert. denied*, 487 U.S. 1204 (1988) ..........14

*Beberman v. United States Dep't of State*, 675 F. App'x 131 (3d Cir. 2017) ........................30, 31

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................26

*Bennett v. Spear*, 520 U.S. 154 (1997) ........................................................................................17

*Blinder, Robinson & Co. v. SEC*, 692 F.2d 102 (10th Cir. 1982).................................................17

*Board of Trade v. SEC*, 883 F.2d 525 (7th Cir. 1989) ..................................................................19

*Bowen v. Massachusetts*, 487 U.S. 879 (1988).......................................................................16, 18

*Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86 (3d Cir. 1992)................................................31

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941)............................................20, 21

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000)..................................................................24

*Dempsey v. United States*, No. CV 152847 FL WLHG, 2015 WL 6561217  (D.N.J. Oct. 29, 2015) ........................................................................................................................15

*Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999)............................................................16

*Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016 (C.D. Cal. 2010)....19

*Donaldson v. United States*, 400 U.S. 517 (1971) .......................................................................29

*ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223 (3d Cir. 1987) .....................................................31, 33

*EEOC v. Univ. of Penn.*, 850 F.2d 969 (3d Cir. 1988) ...................................................... 20-21, 25

*Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994) ........................................................14

*Federal Trade Comm'n. v. Standard Oil of California*, 449 U.S. 232 (1980); ....................17, 27

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205 (3d Cir. 2014) ..............................30

*FTC v. Carter*, 636 F.2d 781 (D.C. Cir. 1980) ........................................................................29

*First Jersey Secs., Inc. v. SEC*, 553 F. Supp. 205 (D.N.J. 1982)......................................15, 17

*Glasco v. Hills*, 558 F.2d 179 (3d Cir. 1977)............................................................................31

*Glob. Fin. Corp. v. United States*, 67 F. App'x 740 (3d Cir. 2003) ............................................14

*Hannah v. Larche*, 363 U.S. 420 (1960)....................................................................................27

*Heckler v. Chaney*, 470 U.S. 821 (1985) ...................................................................................18

*Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614 (3d Cir. 1969) ..............................30

*Hunter v. SEC*, 879 F. Supp. 494 (E.D. Pa. 1995).........................................................19, 27, 35

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989)...........................31

*Indus. Highway Corp. v. Danielson*, 796 F. Supp. 121 (D.N.J. 1992) ......................................15

*Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006) ......21

*Kokesh v. SEC*, __ U.S. __, 137 S.Ct. 1635 (2017) ................................................................3, 11

*Kukatush Mining Corp. v. SEC,* 198 F. Supp. 508 (D.D.C. 1961) *aff'd*, 309 F.2d 647 (D.C. Cir. 1962). ..................................................................................................................................34

*Lane v. Pena*, 518 U.S. 187 (1996)............................................................................................14

*In re McVane*, 44 F.3d 1127 (2d Cir. 1995)................................................................................29

*NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151 (3d Cir. 1999) .....................................30

*NVE, Inc. v. HHS*, No. 04–0999, 2004 U.S. Dist. LEXIS 30876 (D.N.J. Aug. 4, 2004) .............15

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990)......................30

*Paradyne v. U.S. DOJ*, 647 F. Supp. 1228 (D.D.C. 1986). .........................................................14

*Paul v. Davis*, 424 U.S. 693 (1976) ..........................................................................................27

*RNR Enterprises, Inc. v. SEC*, 122 F.3d 93 (2d Cir. 1997)..................................................27, 28

*Sampson v. Murray*, 415 U.S. 61 (1974) ...................................................................................30

*Schmidt v. United States*, 198 F.2d 32 (7th Cir. 1952) ................................................................34

*SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047 (2d Cir. 1973)............................27, 33

*SEC v. Gentile*, Civ. Case No. 16-1619, 2017 WL 6371301 (D.N.J. Dec. 13, 2017) ........3, 10, 11

*SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975) ......................................................................27

*SEC v. Indep. Drilling Corp.*, 595 F.2d 1006 (5th Cir. 1979) ......................................................14

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1985)..............................................................19, 28

*SEC v. Knopfler*, 658 F.2d 25 (2d Cir. 1981). .....................................................................27, 29

*SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975)...............................................35

*SEC v. Rivlin*, No. 99-1455 (RCL), 1999 WL 1455758 (D.D.C. Dec. 20, 1999)....................33-34

*SEC v. Tiffany Industries, Inc.*, 535 F. Supp. 1167 (E.D. Missouri 1982) ..................................19

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970).....................................25

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)....................................................15

*Smith v. McIver*, 22 U.S. 532 (1824). ..........................................................................................20

*Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983).............................................................16, 18, 20

*Sprecher v. Von Stein*, 772 F.2d 16 (2d Cir. 1985)......................................................................20

*State of Georgia v. City of Chattanooga*, 264 U.S. 472 (1924)....................................................17

*Sturm v. Clark*, 835 F.2d 1009 (3d Cir. 1987) .............................................................................27

*Treats Int'l Enterprises, Inc. v. SEC*, 828 F. Supp. 16 (S.D.N.Y. 1993) .....................................19

*United States v. Gentile*, 235 F. Supp. 3d 649 (D.N.J. Jan. 30, 2017)...........................................7

*United States v. Orleans*, 425 U.S. 807 (1976)............................................................................14

*United States v. Powell*, 379 U.S. 48 (1964) ...............................................................................27

*United States v. Sherwood*, 312 U.S. 584 (1941).........................................................................14

*United States v. Judicial Watch, Inc.*, 241 F. Supp. 2d 15 (D.D.C. 2003)...................................35

**STATUTES AND LEGISLATIVE MATERIALS**

Securities Act of 1933, 15 U.S.C. § 77a, *et seq*.

    Section 5(a), 15 U.S.C. § 77e(a) ............................................................5, 23

    Section 5(c), 15 U.S.C. § 77e(c) ............................................................5, 23

    Section 17(a), 15 U.S.C. § 77q(a) ........................................................5, 23

    Section 17(b), 15 U.S.C. § 77q(b) ........................................................5, 23

Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

    Section 10(b), 15 U.S.C. § 78j(b) .........................................................5, 23

    Section 15(a), 15 U.S.C. § 78o(a) .........................................................6, 23

    Section 21a, 15 U.S.C. § 78u .........................................1, 15, 16, 28, 34

    Section 21a(a), 15 U.S.C. § 78u(a) .................................................19, 36

    Section 21a(c), 15 U.S.C. § 78u(c) .................................1, 16, 18, 26

Administrative Procedure Act, 5 U.S.C. § 500, *et seq.*

    5 U.S.C. § 701 ...................................................................................18

    5 U.S.C. § 702 ............................................................................16, 18

    5 U.S.C. § 704 ...................................................................................16

28 U.S.C. § 1331..................................................................1, 15, 18

28 U.S.C. § 1391..................................................................................25

Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* ........................1, 15

28 U.S.C. § 2462.........................................................................4, 11

Registration Requirements for Foreign Broker-Dealers, 54 FR 30013-01, 1989 WL 279892 (July 18, 1989). ........................................................................7

H. Rep. No. 1321, 96th Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3874, 3878..19

**RULES AND REGULATIONS**

Title 17, Part 240, Code of Federal Regulations

Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5 ........................................................5, 23

Exchange Act Rule 15a-6(a)(1), 17 C.F.R. § 240.15a-6..................................................7

17 C.F.R. § 202.5 .....................................................................................................28

Federal Rules of Civil Procedure

Rule 12(b)(1) ............................................................................................................1

Rule 12(b)(6)........................................................................................................2, 26

## INTRODUCTION

The Court should dismiss[1] plaintiff Gentile's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Subpoena enforcement actions brought by the Commission pursuant to Section 21(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(c), such as those pending in the Southern District of Florida, are the exclusive means through which to challenge Commission investigations and subpoenas. Moreover, Congress has not waived sovereign immunity to permit plaintiff's collateral attack on an ongoing SEC investigation. Neither basis for jurisdiction cited by plaintiff—28 U.S.C. § 1331 and 15 U.S.C. § 78u—waives sovereign immunity. Nor does the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*—which plaintiff does not cite although he seeks declaratory relief—waive sovereign immunity. In addition, the Administrative Procedure Act—which plaintiff also does not explicitly invoke—does not waive sovereign immunity here, because the APA precludes judicial intervention when there has been no "final" agency action and plaintiff has an adequate legal remedy. The SEC's investigation and the subpoenas are not final agency action, and Gentile has an adequate avenue for review of the SEC's investigation. He may seek to challenge a Commission subpoena in the pending subpoena enforcement actions in the Southern District of Florida or, if the Commission brings an enforcement action against him as a result of its investigation, he can contest the enforcement action and assert all of his purported defenses he seeks to raise here.

---

[1] By Order dated March 8, 2019, the Court ordered the parties "to address any issues concerning proper jurisdiction and/or venue for this matter in their briefing as to a preliminary injunction." March 8, 2019 Order at 2. The SEC argues here that plaintiff's complaint should be dismissed, among other reasons, for lack of subject matter jurisdiction. Accordingly, the SEC has framed this filing as a memorandum of law (1) in opposition to plaintiff's motion for preliminary injunction and (2) in support of the SEC's motion to dismiss plaintiff's complaint.

The first-to-file rule also forecloses Gentile's attempt to misuse this Court to collaterally attack the already-pending subpoena enforcement actions in the Southern District of Florida. Gentile's complaint in this matter and his motion for preliminary injunction concern the same subject matter as the subpoena enforcement actions filed in the Southern District of Florida and are merely an attempt to circumvent those earlier-filed actions. Assuming arguendo that this Court has jurisdiction, venue does not lie here because Section 21(c) of the Exchange Act provides that venue for litigation concerning a person's duty to comply with a Commission subpoena is that district where the "investigation or proceeding is carried on or where such person resides or carries on business": here the Southern District of Florida.

In addition, the Court should dismiss Gentile's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Gentile has not alleged facts which, if established, would demonstrate that the Commission has engaged in any abuse of process as he contends. To the contrary, his allegations do no more than illustrate that the Commission is appropriately engaged in a legitimate inquiry into possible violations of the federal securities laws.

The Court should also deny Gentile's request for a preliminary injunction. As the Court lacks jurisdiction and Gentile fails to state a claim for relief, he has not shown a likelihood of success on the merits of his claim. Moreover, his complaint and motion for preliminary injunction demonstrate that he is not facing any harm—let alone irreparable harm—warranting injunctive relief. Gentile has generally alleged a reputational harm stemming from the subpoenas issued in the Miami Investigation and the past and future termination of business relationships allegedly as a result of the subpoenas. Compl. ¶¶ 6-7, 25-27. Gentile's alleged harms could be remedied by money damages from those entities he claims have severed business relationships

2

with him. And the risk of future termination of business relationships is merely speculative. Neither alleged harm presents the extraordinary situation requiring injunctive relief. Moreover, the balance of equities and public interest weigh against enjoining an investigation into possible violations of federal securities laws that has been committed to the SEC's discretion.

## STATEMENT OF FACTS[2]

This case concerns two separate SEC enforcement investigations that are unrelated except that each involves plaintiff Gentile or his affiliates. The first investigation was conducted by the SEC's New York Regional Office (NYRO) and culminated in a case that this Court previously addressed, *SEC v. Gentile*, Civ. Case No. 16-1619. The second is an ongoing investigation that is being handled by the SEC's Miami Regional Office (MIRO), in which subpoena enforcement proceedings are pending in the U.S. District Court for the Southern District of Florida.

On March 23, 2016, the SEC's NYRO filed a complaint against Gentile in connection with two penny stock manipulation schemes (the "Penny Stock Fraud Case"). *SEC v. Gentile*, Civ. Case No. 16-1619, 2017 WL 6371301, at *1 (D.N.J. Dec. 13, 2017); *see also* Ford Decl. Ex. 8. After a series of stays—which are described in more detail below, including a stay in light of the potential effect on the relevant statute of limitations in light of *Kokesh v. SEC*, __ U.S. __, 137 S.Ct. 1635 (2017)—the SEC filed an amended complaint in October 2017. Ford Decl. Ex. 28. On December 13, 2017, the Court dismissed the SEC's amended complaint, concluding it

---

[2] For purposes of this opposition, except where otherwise noted, the SEC will rely on the facts as presented by Gentile in his complaint and memorandum of law in support of his motion for a preliminary injunction (including exhibits to the memorandum of law), and on documents of which this Court may take judicial notice. Reliance on the facts as presented by Gentile does not indicate that the SEC agrees that they are accurate (and, indeed, they are not accurate). Even assuming Plaintiff's facts and versions of events—though not his characterization or innuendo regarding those facts—his arguments fail.

was barred by a five-year statute of limitations under 28 U.S.C. § 2462. *Gentile*, 2017 WL
6371301, at *4. An appeal of the dismissal is pending before the Court of Appeals for the Third
Circuit. *SEC v. Gentile*, No. 18-1242 (3d Cir. filed Feb. 2, 2018).

Separately, the SEC's MIRO has been conducting an investigation that has been ongoing
for several years. On November 25, 2013, the SEC issued a non-public[3] Order Directing Private
Investigation and Designating Officers to Take Testimony in the Matter of Traders Café LLC
(FL-03848) (Ford Decl. Ex. 1) (the "Traders Café FOI").[4] The FOI directs the SEC's staff to
conduct a private investigation (the "Miami Investigation") to determine whether Trader's Café
and its "*affiliates and/or other individuals or entities related thereto*" have engaged in, or are
about to engage in, the enumerated potential violations of the federal securities laws. *Id.*
(emphasis added).[5]

_____

[3] Certain aspects of the Miami Investigation, including the Traders Café Formal Order of
Investigation, have been made public in the course of this matter and in subpoena enforcement
matters filed as part of the Miami Investigation. *See, e.g.,* Securities and Exchange
Commission's Application for an Order to Show Cause and an Order Enforcing Administrative
Remedies, *SEC v. Marin*, 19-mc-20493 (S.D. Fla. Feb. 6, 2019) ("Marin OSC") (Ford Decl. Ex.
3) at 3; Securities and Exchange Commission's Application for an Order to Show Cause and an
Order Enforcing an Administrative Subpoena Against MinTrade Technologies, LLC, *SEC v.
MinTrade Technologies, LLC*, 19-mc-20493 (S.D. Fla. Feb. 6, 2019) ("MinTrade OSC") (Ford
Decl. Ex. 4) at 2.

[4] Contrary to Gentile's accusation that the Miami Investigation is "demonstrably intended solely
for the purpose of harassment and to retaliate against Mr. Gentile for stopping his full-time
cooperation with the SEC in 2015 and previously defeating * * * the SEC in civil litigation last
year" (Compl. ¶ 5), the Traders Café FOI (Ford Decl. Ex. 1), the six-year history of the Miami
Investigation, and the subpoenas to Gentile and related entities as early as 2015, demonstrate that
the Miami Investigation cannot be retaliatory. The Traders Café FOI and several subpoenas pre-
date Gentile's cessation of cooperation in 2015 and pre-date the Court's December 2017 order
dismissing the SEC's complaint against Gentile in the Penny Stock Fraud Case.

[5] The Traders Café FOI was issued in 2013, and Gentile has known about the Miami
Investigation since at least 2015. Despite his assertion that the SEC has been conducting the
Miami Investigation for too long and without bringing a case (*see, e.g.*, Compl. ¶¶ 9-10 ), the
history of the investigation reveals repeated resistance to responding to subpoenas or other

The subject matter of the Penny Stock Fraud Case and the Miami Investigation differ greatly. The complaint in the Penny Stock Fraud Case alleged that Gentile, who owned and operated a registered broker-dealer based in New York, engaged in manipulative trading, provided illegal kick-backs, and distributed promotional mailings of glossy "newsletters" with fake publication names like "Stock Trend Report" and "Global Investor Watch," to tout the stocks of purported gold and silver exploration company Raven Gold Corporation and natural gas production company Kentucky USA Energy. The Commission alleged that the newsletters misled investors with purportedly positive – but fake – price and volume trends for these stocks and other false information about the promoters' identity, compensation, and control of the stock, when, in reality, most of the touted market activity was generated by Gentile and his associates who controlled large blocks of the stocks. The schemes allegedly began in April of 2007. *Id.* The complaint charged Gentile with violations of Sections 5(a), 5(c), 17(a) and 17(b) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c), 77q(a) and 77q(b)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Exchange Act Rule 10b-5 [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

In contrast, the subpoena enforcement actions filed in the Southern District of Florida as part of the Miami Investigation seek enforcement of subpoenas for testimony and documents issued in a separate ongoing investigation related to potential broker-dealer registration

---

requests over a period of years by Gentile, Marin, and related entities. On August 17, 2015, the Commission's MIRO issued a subpoena to Gentile as part of its investigation. Ford Decl. Ex. 6. And on August 24, 2015, the Commission's MIRO notified Swiss America, care of Gentile, that it was subpoenaing financial records at KeyBank as part of its investigation. Ford Decl. Ex. 15; Compl. ¶ 34. Gentile did not comply with the August 17, 2015 subpoena. The MIRO staff sent another subpoena to Gentile on March 30, 2016. Ford Decl. Ex. 19. When the MIRO staff inquired in June and July of 2016 whether Gentile would appear or otherwise answer questions related to the Miami Investigation, he declined. Compl. ¶¶ 43-46.

violations that do not concern the penny stock manipulation scheme at issue in the Penny Stock

Fraud Case and did not arise from it. In the Miami Investigation, the SEC has been investigating

Swiss America Securities, Ltd., formerly known as SureTrader and currently known as

MintBroker International Ltd. ("Swiss America" or "SureTrader"), a Bahamas-based broker-

dealer registered with the Securities Commission of the Bahamas, but not with the SEC, and its

owner, Gentile, in connection with potential violations of the broker-dealer registration

provisions of the federal securities law. *See* Marin OSC (Ford Decl. Ex. 3) at 1-2; MinTrade

OSC (Ford Decl. Ex. 4) at 1. The Miami Investigation has revealed that Traders Café, a U.S.-

based day trading firm, maintained a master account at SureTrader. Swiss America is not

registered as a broker-dealer in the United States. Nor is its principal, Guy Gentile. *Id.*

The Miami Investigation also has revealed that Swiss America and Gentile have

transferred U.S. customer funds from overseas to a U.S. bank account at Wells Fargo in the name

of Mint Custody Limited ("Mint Custody"). Carla Marin is the owner and sole employee of Mint

Custody, a Delaware corporation which Marin claims is in the business of "holding custody" and

which appears to have held Swiss America customers' funds during a time period relevant to the

Miami Investigation. Marin OSC (Ford Decl. Ex. 3) at 4-5. The Miami Investigation has

revealed that MinTrade is a Florida limited liability company based in West Palm Beach that is

connected to SureTrader and Gentile. Nicholas Abadiotakis is MinTrade's registered agent and

according to his LinkedIn profile, has been a trader at Stock USA Execution Services, LLC

("Stock USA"), a Gentile affiliate.[6] MinTrade OSC (Ford Decl. Ex. 4) at 3. Issues central to the

potential violations include whether Swiss America's customers include United States residents

---

[6] Through a trust of which Abadiotakis is the trustee, Gentile owns a majority interest in Stock
USA (now known as Mint Global Markets), which clears trades for SureTrader. MinTrade OSC
(Ford Decl. Ex. 4) at 3.

and the movement of customer funds. *Id.*[7] The SEC is investigating, among other things, possible ongoing violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a). *Id.* Section 15(a) prohibits an unregistered broker-dealer from executing transactions in securities through interstate commerce.[8]

On May 12, 2016, in the NYRO's Penny Stock Fraud Case, Gentile and the SEC stipulated to and the Court ordered a stay pending the resolution of parallel criminal proceedings by the United States against Gentile. Ford Decl. Ex. 9. Paragraph 2 of the stipulation explicitly acknowledged the possibility of other continuing SEC investigations of Gentile's conduct, which includes the Miami Investigation, stating, "This stay shall not alter the substantive or other procedural rights of the parties, including the Commission's right to continue to investigate other matters, by means of administrative subpoenas or otherwise. All such rights are expressly reserved." *Id.* ¶ 2.

In January 2017, the Court granted Gentile's motion to dismiss the parallel criminal matter based on statute of limitations grounds. *United States v. Gentile*, 235 F. Supp. 3d 649

---

[7] Contrary to Gentile's unsupported conjecture that "[n]one of the SEC's inquiries [in the Miami Investigation] are remotely related to Traders Café" (*see, e.g.,* Compl. ¶¶ 6, 30, 33), the transactions described above show dealings between named persons under investigation in the FOI and affiliates, like Swiss America and Mint Custody, and money flowing between the affiliates.

[8] "Because of the broker-dealer's role as an intermediary between customers and the securities markets, broker-dealers have been required to register with the Commission since 1935." Registration Requirements for Foreign Broker-Dealers, 54 FR 30013-01, 1989 WL 279892, at *30014-15 (July 18, 1989). "The definitions in the Exchange Act of broker and dealer and the registration requirements of section 15(a) of the Exchange Act were drawn broadly by Congress to encompass a wide range of activities involving investors and securities markets. Section 15(a) of the Exchange Act generally requires that any broker or dealer using the mails or any means or instrumentality of interstate commerce to induce or effect transactions in securities must register as a broker-dealer with the Commission." *Id.* Foreign broker dealers are not exempt from the SEC's registration and regulatory regime simply by virtue of their location outside of the United States. *See* Exchange Act Rule 15a-6(a)(1), 17 C.F.R. § 240.15a-6

(D.N.J. Jan. 30, 2017). The Government did not pursue an appeal in the criminal matter. *See*

*United States v. Gentile*, Crim. No. 16-155, ECF Nos. 34-37. Thereafter, on April 26, 2017, the

NYRO filed a letter requesting lifting of the stay in the Penny Stock Fraud Case. April 26, 2017

Letter (Ford Decl. Ex. 11). In its letter, the NYRO noted, among other things, the existence of

the Miami Investigation, stating:

> Whatever the outcome of Gentile's present request for a
> resumption of the Stay, the Court should be aware that the
> Commission has a pending, non-public investigation into possible
> securities laws violations arising out of Gentile's operation of his
> Bahamian broker-dealer. Of course, if the staff determines that
> documents obtained in that investigation are relevant to the
> allegations in the instant Complaint, it will make them available to
> Gentile if and when discovery is allowed.

April 26, 2017 Letter at n.8.[9] This footnote did not state that the Penny Stock Fraud Case and

Miami Investigation were related; it merely acknowledged that *if* information from the Miami

Investigation proved to be relevant to the Penny Stock Fraud Case and *if* discovery were allowed

in the Penny Stock Fraud Case, then the information from the Miami Investigation would be

provided to Gentile, as required by the applicable discovery rules.

On April 28, 2017, as directed by the Court's April 12, 2017 Order, the SEC provided

initial disclosures to Gentile in the Penny Stock Fraud Case. Ferguson Decl. Ex. 1. Footnote 1 to

the initial disclosures made reference to the Miami Investigation, stating, among others things,

that "[t]his initial disclosure does not include certain related investigations that are still not public

or do not concern the factual allegations of the Complaint." The language of that footnote,

particularly in the context of the April 26, 2017 Letter, makes clear that the other investigations

---

[9] The text of the April 26, 2017 Letter directly contradicts Gentile's characterization that "[t]he
SEC argued that the SEC investigation out of the Miami Regional Office, a clear reference to the
Traders Café Investigation, was related to the conduct alleged in the SEC complaint then
pending before Judge Linares in the New Jersey District Court." Compl. ¶ 63.

were only "related" in that they involved Gentile or other individuals involved in the Penny Stock Fraud Case. Subsequent communications by the parties to the Court re-affirmed that the New York and Miami matters were substantively separate. For example, on May 9, 2017, the SEC filed with the Court a follow-up letter regarding the stay in which it reiterated that the Miami Investigation had been ongoing since before the indictment against Gentile was filed. Ford Decl. Ex. 16.

On May 25, 2017, Gentile filed a letter with the Court arguing—based on the SEC's April 28, 2017 initial disclosures—that the Miami Investigation was related to the Penny Stock Fraud Case. Ford Decl. Ex. 23. Gentile described the ongoing Miami Investigation (*id.* at 2-3) and asked the Court to order the SEC "to immediately cease the service of any investigative subpoenas in this and any related matter, pending the termination of the above-captioned case, and to direct recipients of outstanding, as yet un-returned subpoenas, that they are under no obligation to respond to these extra-judicial subpoenas."[10] *Id.* at 4. The SEC responded that same day, explaining:

> as * * * disclosed to the Court in [the] letter of April 26, 2017
> * * *, another regional office of the Commission is conducting a
> separate investigation into matters including possible violations
> arising out of Gentile's operation of his Bahamian broker-dealer.
> Gentile has long been aware of it – since at least August 2015, and
> his counsel in this case has had multiple contacts with the staff
> assigned to that investigation. Gentile even acknowledged his
> understanding that the Commission would be pursuing it in the

---

[10] Gentile's request in the May 25, 2017 Letter contradicts the statement in support of his motion here that, "No prior request for the relief sought herein has been made to this or any other court." *See* Ford Decl. ¶ 54. Indeed, Gentile's motion for preliminary injunction admits that he has previously sought the relief now requested. PI Memo at 17 ("On May 25, 2017, Gentile filed a letter with this Court, arguing that the SEC should not be allowed to serve investigative subpoenas for its 'related' case in Miami during the time period that the related case in New Jersey was stayed * * *."). At that time, this Court did not lift the stay in the Penny Stock Fraud Matter, but it also did not stay the Miami Investigation.

> Stipulation he signed first staying this matter. (DE 8, at ¶ 2) ("This stay shall not alter the substantive or other procedural rights of the parties, including the Commission's right to continue to investigate other matters, by means of administrative subpoenas or otherwise.").

May 25, 2017 Letter from Nancy A. Brown to Hon. Joseph A. Dickson (Ford Decl. Ex. 17).[11]

The May 25, 2017 Letter reiterated the reason for even noting the other investigation at all: "any materials obtained in the Commission's separate investigation [the Miami Investigation] that 'are relevant to the allegations in the instant Complaint' will be made available to Gentile 'if and when discovery is allowed.'" May 25, 2017 Letter, *quoting* April 26, 2017 Letter. But the May 25, 2017 Letter also made clear that "[t]he conduct that is the subject of the Commission's separate investigation is just that: separate. If the Commission were required to stop investigating different conduct perpetrated by defendants it sues, then such defendants would have a free pass to violate the law pending the litigation of the Commission's claims * * *." *Id.*

On May 30, 2017, Magistrate Judge Dickson held a telephonic status conference regarding the parties' filings. Judge Dickson did not order the SEC to halt the Miami Investigation. *See SEC v. Gentile*, Case No. 16-1619 (D.N.J.), Docket Entries 28, 29, and dated May 30, 2017 (Ferguson Decl. Ex. 2). In the months following the May 30, 2017 telephonic conference, the Miami Investigation continued. On September 1, 2017, the MIRO issued a subpoena to Marin—the owner of Mint Custody, which appears to have held Swiss America

---

[11] Gentile mistakenly argues that the SEC represented to Your Honor that the Penny Stock Fraud Case was related to the Traders Café case (*see* Compl. ¶ 8). To the contrary, Gentile's and the NYRO's letters were directed to Magistrate Judge Dickson, not Your Honor. And, contrary to Gentile's assertion, the text of the communications quoted above demonstrates that the SEC consistently explained that the Penny Stock Fraud Case and the Miami Investigation are separate and substantively unrelated.

customers' funds during a time relevant to the Miami Investigation—seeking her testimony. Ferguson Decl. Ex. 3.

Following the Court's decision on the stay in the Penny Stock Fraud Case, the parties continued to disagree about what claims against Gentile remained viable following the Supreme Court's decision in *Kokesh v. SEC*, __ U.S. __, 137 S.Ct. 1635 (2017), which addressed statute of limitations questions related to certain SEC claims. After briefing on Gentile's motion to dismiss the original complaint in the Penny Stock Fraud Case, the Court directed the SEC to file an Amended Complaint. Opinion and Order, *SEC v. Gentile*, Case No. 16-1619 (D.N.J. Sept. 18, 2017), at 3 (Ferguson Decl. Ex. 4). The SEC filed an amended complaint on October 6, 2017, and on December 13, 2017, the Court dismissed the SEC's amended complaint, concluding it was barred by a five-year statute of limitations under 28 U.S.C. § 2462. *Gentile*, 2017 WL 6371301, at *4.

From September 2017 through December 2018, the MIRO continued to seek information relevant to its investigation. *See SEC v. Marin*, Case No. 19-20493 (S.D. Fla.) (Ford Decl. Ex. 3); *SEC v. MinTrade*, Case No. 19-20496 (S.D. Fla.) (Ford Decl. Ex 4). On February 6, 2019, the MIRO filed an Application for an Order to Show Cause and an Order Enforcing Administrative Subpoenas in *SEC v. Marin*, Case No. 19-20493 (S.D. Fla.) (the "Marin OSC") and in *SEC v. MinTrade*, Case No. 19-20496 (S.D. Fla.) (the "MinTrade OSC"). Ford Decl. Exs. 3 & 4.[12] Both applications relate to the Miami Investigation and the investigation of Swiss America, and they are pending in the U.S. District Court for the Southern District of Florida. The Marin Order to

---

[12] Despite Gentile's complaint about the length of the Miami Investigation, the Marin OSC recounts in detail the difficult and lengthy process by which the MIRO has sought information from witnesses, which ultimately resulted in the recent need for subpoena enforcement proceedings. *See* Marin OSC (Ford Decl. Ex. 3) ¶¶ 10a-cc. In addition, Gentile himself refused to testify or produce documents in response to the MIRO's subpoenas and requests absent a court order. *See, e.g.*, Compl. ¶¶ 42-46, 86, 89.

Show Cause seeks to enforce the subpoenas for testimony and documents seeking information related to Swiss America (which is owned by Gentile) customers' funds held by Mint Custody during a time period relevant to the Commission's Investigation. The Mint Custody account was under Marin's exclusive control and she was the sole signatory on the account. Marin OSC (Ford Decl. Ex. 3) at 2. The MinTrade Order to Show Cause seeks to enforce the subpoena for production of documents related to Gentile, Suretrader, and its affiliates. MinTrade OSC (Ford Decl. Ex. 4) at 3. Gentile has indicated that he intends to intervene in the Marin and MinTrade actions. PI Memo at 7.

**Gentile Files This Action Seeking Temporary and Preliminary Injunctive Relief**

Two days after MIRO's subpoena enforcement actions were filed in Florida, on February 8, 2019, Gentile filed this action, in which he seeks "declaratory and injunctive relief to prevent the Commission – acting principally through its staff attorneys in the Miami Regional office of the SEC – from continuing to abuse its investigatory process * * *." Compl. ¶ 1. The "action specifically seeks to quash several [Commission investigative] subpoenas and any evidence obtained through them that was served on Mr. Gentile, his lawyer, his trustee, his bank, his company's vendors and clients, and other individuals and entities served pursuant to the Traders Café FOI." Compl. ¶ 5. Gentile has premised his complaint on the argument that the SEC has represented that the Penny Stock Fraud Case and the Miami Investigation are related, notwithstanding the SEC's repeated explanations that the two matters are separate and not related other than that both involve possible securities law violations by Gentile and/or his affiliates. *See* Compl. ¶¶ 8, 17, 63-65, 68, 73. Gentile does not allege any facts which, if proved, would establish that the Miami Investigation is related to the Penny Stock Fraud Case. While acknowledging that the Commission can "lawfully pursue[] an unrelated investigation," he

asserts that the Penny Stock Fraud Case and Miami Investigation are related and draws the unsupported conclusion that the MIRO investigation is improper. Compl. ¶¶ 70-71. Gentile also attempts to conflate the Penny Stock Fraud Case and the Miami Investigation, implying that any wrongdoing uncovered in the Miami Investigation should have been included in the Amended Complaint in the Penny Stock Fraud Case (Compl. ¶¶ 75, 82) and that the stay in the Penny Stock Fraud Case should have foreclosed the ongoing investigation in the Miami matter even after the Penny Stock Fraud Case was dismissed (Compl. ¶¶ 41, 60-62).

Gentile's complaint includes a single cause of action for alleged abuse of process. Comp. ¶¶ 95-101. He requests: an order "quashing all subpoenas served pursuant to the Traders Café FOI;" an order declaring further investigation of Gentile pursuant to the Traders Café FOI as without statutory authority and an abuse of process; and an order "precluding the SEC from using any evidence obtained through" the Traders Café FOI for any purpose in any future proceeding. Compl. at 24. Gentile's complaint does not identify any statutory authority or judicial precedent that would entitle him to the extraordinary relief he seeks.

On March 5, 2019, Gentile filed his motion for injunctive relief together with a memorandum of law, in which he challenges the legality of the Miami Investigation, which he asserts "flies in the face of" the decision in the Penny Stock Fraud Case. PI Memo at 1; *see also id.* at 6. As the Court on March 8, 2019, denied Gentile's request for a temporary restraining order, the SEC addresses herein only his request for a preliminary injunction. To support the purported urgency of his requests for injunctive relief, Gentile cites the subpoena enforcement actions filed on February 6, 2019, by the MIRO staff and a litigation release posted on March 4, 2019, advising the public of the pendency of the subpoena enforcement action. *Id.* at 2. Gentile identifies as purported irreparable harm the alleged termination of relationships with several

13

financial institutions following the issuance of subpoenas by the SEC (*id.* at 4, 29-30) and potential future harm if new subpoenas are issued. *Id.* at 7, 25. He argues that he is likely to succeed on the merits of his claims by asserting that the Miami Investigation is not authorized by the Traders Café FOI, and then presuming that the MIRO subpoenas that are the subject of the Commission's pending subpoena enforcement action in the Southern District of Florida are not relevant to an authorized investigation. PI Memo, at 22-24.

**ARGUMENT**

I.    **This Court Lacks Subject Matter Jurisdiction Over Gentile's Complaint**

A.    *Gentile Has Not Identified a Waiver of Sovereign Immunity that Authorizes This Action*

The United States, "as sovereign, is immune from suit save as it consents to be sued * * * and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). That is, consent to suit is a prerequisite to subject matter jurisdiction over a claim against the United States, its agencies, and officials. *See United States v. Orleans*, 425 U.S. 807, 814 (1976); *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *see also SEC v. Indep. Drilling Corp.*, 595 F.2d 1006, 1008 (5th Cir. 1979) (doctrine of sovereign immunity applies to the SEC).

Waiver of the government's sovereign immunity must be "expressed in unequivocal statutory text and cannot be implied" and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Gentile, as plaintiff, "bears the burden of showing an unequivocal waiver of immunity." *Glob. Fin. Corp. v. United States*, 67 F. App'x 740, 742 (3d Cir. 2003) (*quoting Baker v. United Stat*es, 817 F.2d 560, 562 (9th Cir.1988), *cert. denied*, 487 U.S. 1204 (1988)); *Paradyne v. U.S. DOJ*, 647 F. Supp. 1228, 1231

14

(D.D.C. 1986). Gentile has not identified and cannot identify a waiver of the Commission's sovereign immunity that would authorize this litigation. The statutes Gentile cites in his complaint's jurisdictional statement—28 U.S.C. § 1331 and 15 U.S.C. § 78u—do not waive sovereign immunity. Nor does the Declaratory Judgment Act—which he alludes to in his request for relief—waive sovereign immunity. Nor does any other provision of which the Commission is aware waive sovereign immunity here.

1.  The Federal Jurisdiction Statute, the Declaratory Judgment Statute, and Section 21 of the Exchange Act Do Not Waive Sovereign Immunity

In his statement of jurisdiction, Gentile cites 28 U.S.C. § 1331 and 15 U.S.C. § 78u. Moreover, he seeks declaratory relief, suggesting that he may be invoking the Declaratory Judgment Act. None of these provisions waive sovereign immunity. Neither the federal jurisdiction statute nor the Declaratory Judgment Act statute, 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-2202 respectively, include an explicit waiver of the Government's sovereign immunity from suit. *See Dempsey v. United States*, No. CV152847FLWLHG, 2015 WL 6561217, at *2 (D.N.J. Oct. 29, 2015) (*citing NVE, Inc. v. HHS*, No. 04–0999, 2004 U.S. Dist. LEXIS 30876, at *9 (D.N.J. Aug. 4, 2004) ("It is also well-established that the Declaratory Judgment Act does not grant jurisdiction or waive sovereign immunity, but merely provides a remedy" where a court otherwise has jurisdiction) (*citing Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)), *remanded on other grounds*, 436 F.3d 182 (3d Cir. 2006); *Indus. Highway Corp. v. Danielson*, 796 F. Supp. 121, 125 (D.N.J. 1992) ("Section 1331, the federal question statute, does not in itself abrogate the United States' sovereign immunity."), *aff'd*, 995 F.2d 217 (3d Cir. 1993). In addition, Section 21 of the Exchange Act, 15 U.S.C. § 78u, contains no provision permitting a suit against the Commission or the United States. *First Jersey Secs., Inc. v. SEC*,

553 F. Supp. 205, 209 (D.N.J. 1982) ("the procedures established for review of SEC actions deprive this court of jurisdiction over suits that seek to interrupt the agency proceedings").

2.   The APA Does Not Waive Sovereign Immunity Here

Gentile does not expressly rely on the APA for jurisdiction, nor can he do so. The APA waives the government's sovereign immunity only for claims that meet all of the requirements of its provisions. *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988). Gentile's claim fails to meet the requirements of the APA. The Supreme Court has established that the APA does not waive sovereign immunity for all equitable actions against the government. *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 263 (1999) (holding that an action to enforce an equitable lien falls outside of APA Section 702's waiver of sovereign immunity). The Court has emphasized that courts must strictly construe the waiver of sovereign immunity in the APA in favor of the government and find waiver only when it is "unequivocally expressed" in the statute. *Id.* at 261. Gentile's claim cannot proceed as it does not fit within the APA's limited waiver of sovereign immunity.

a.   Gentile's Claim Does Not Fall Within Section 704

Section 704 of the APA grants the right to judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no adequate remedy." 5 U.S.C. § 704. Gentile does not appear to contend that he is challenging "[a]gency action made reviewable by statute." The only statute cited, 15 U.S.C. § 78u, does not waive sovereign immunity or make an agency action reviewable. To the contrary, as discussed below, courts have found that that Commission subpoena enforcement actions under § 78u(c) are the exclusive means through which to challenge SEC investigations and subpoenas. *Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir. 1983); *see also Arjent LLC v. SEC*, 7 F. Supp. 3d 378, 383 (S.D.N.Y

16

2014) (discussing *Sprecher*). Consequently, Gentile must demonstrate that he is challenging final agency action for which there is no adequate remedy apart from this suit. He cannot do so.

First, Gentile is not challenging a "final" agency action. To be considered "final" within the APA, an agency decision must "impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (no final agency action occurs unless the action is "one by which rights or obligations have been determined or from which legal consequences flow.") (citation omitted). Conducting an investigation is interlocutory in nature and generally is not subject to judicial review under the APA. *See Federal Trade Comm'n. v. Standard Oil of California*, 449 U.S. 232, 239 (1980); *Blinder, Robinson & Co. v. SEC*, 692 F.2d 102, 106 (10th Cir. 1982).

Second, Gentile has adequate legal remedies. Gentile seeks a stay of the Commission's enforcement investigation—particularly its issuance of subpoenas—based on his allegation that the investigation is improper. Gentile's ability to seek to intervene in the subpoena enforcement actions to assert the purported defenses he seeks to assert here constitutes an adequate remedy at law. *See State of Georgia v. City of Chattanooga*, 264 U.S. 472, 483-84 (1924) (a party's ability to assert its claims as a defense in another proceeding constitutes an adequate remedy at law); *First Jersey Secs., Inc. v. SEC*, 553 F. Supp. 205 (D.N.J. 1982) (dismissing complaint seeking to enjoin the filing of an enforcement action because plaintiffs have an adequate remedy at law in the enforcement action). And, should the MIRO Investigation result in the Commission filing an enforcement action against Gentile, he can defend that action and assert his purported defenses there.

   b. Gentile's Claim Does Not Satisfy Section 702 of the APA Because 15
   U.S.C. § 78u(c) Provides an Exclusive Mechanism to Challenge an
   Investigation and Because the Action at Issue is Committed to Agency
   Discretion

Section 702 of the APA is invoked when a party seeks non-monetary relief against the

United States and claims that "an agency or an officer or employee thereof acted or failed to act

in an official capacity or under color of legal authority." 5 U.S.C. § 702.[13] However, Congress

limited its waiver by expressly providing that (1) nothing in the APA affects other limitations on

judicial review (5 U.S.C. § 702), and (2) the APA does not apply where "agency action is

committed to agency discretion by law" (5 U.S.C. § 701(a)(2)).

A subpoena enforcement action under Section 21(c) of the Exchange Act, 15 U.S.C.

§ 78u(c), "is the exclusive method by which the validity of SEC investigations and subpoenas

may be tested in the federal courts." *Sprecher*, 716 F.2d at 975 (emphasis added); *see also Arjent

LLC*, 7 F. Supp. 3d at 383 (discussing *Sprecher*). The court in *Sprecher* explained that while "the

procedures and scope of judicial scrutiny under Section 78u(c) [of the Exchange Act] differ

considerably from those which would be available in an action for abuse of process * * * [t]hat is

of little moment * * * for the proviso to Section 702 expressly preserves existing 'limitations

upon judicial review.'" *Sprecher*, 716 F.2d at 974.

Moreover, the APA does not apply to Gentile's allegations because the initiation of an

investigation has been committed to the Commission's discretion by Congress. An agency action

is "committed to discretion by law" when the statute delegating enforcement power does not

provide "guidelines for the agency to follow in exercising its enforcement powers." *See Heckler

v. Chaney*, 470 U.S. 821, 832-33 (1985) (holding that decision not to bring an enforcement

_____

[13] In this context, Section 1331 itself confers jurisdiction only where claims for judicial relief fall
within the APA's waiver of sovereign immunity. *Bowen v. Massachusetts*, 487 U.S. 879, 910
(1988); *see also Andrus v. Charleston Stone Prods. Co.*, 436 U.S. 604, 607 n.6 (1978).

action is presumptively unreviewable under the APA unless Congress limited an agency's

exercise of its enforcement power).[14] Section 21(a) of the Exchange Act, pursuant to which the

Miami Investigation was initiated and conducted, states that "[t]he Commission *may, in its*

*discretion, make such investigations* as it deems necessary to determine whether any person has

violated, is violating, or is about to violate any provision of this title, [or] the rules or regulations

thereunder." 15 U.S.C. § 78u(a) (emphasis added). The Exchange Act does not contain any

limitations on this authority.

In addition, the legislative history of Section 21(a) states that Congress intended to give

the Commission broad authority to initiate investigations of possible securities laws violations.

*See* H. Rep. No. 1321, 96th Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3874,

3878. *See also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1985); *Treats Int'l Enterprises,*

*Inc. v. SEC*, 828 F. Supp. 16, 18-19 (S.D.N.Y. 1993) ("The statute itself suggests no standards by

which the SEC's discretion to investigate [plaintiff] might be reviewed."); *Hunter v. SEC*, 879 F.

Supp. 494, 501 (E.D. Pa. 1995) (same). Accordingly, courts have uniformly held that the

Commission is immune from APA suits challenging its investigative decisions because of the

discretionary nature of those decisions. *See Arjent*, 7 F. Supp. 3d at 383; *Dichter-Mad Family*

*Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1037-39 (C.D. Cal. 2010) (collecting

cases); *Treats*, 828 F. Supp. at 18.

Because Congress has conditioned its APA waiver of sovereign immunity in at least two

ways that foreclose actions challenging Commission subpoenas and investigations, such actions

---

[14] *See also Board of Trade v. SEC*, 883 F.2d 525, 530 (7th Cir. 1989) ("Refusal to prosecute is a classic illustration of a decision committed to agency discretion * * *. Decisions not to prosecute are presumptively non-reviewable * * *."); *SEC v. Tiffany Industries, Inc.*, 535 F. Supp. 1167, 1168 (E.D. Mo. 1982) (court does not have the jurisdiction to review the Commission's decision not to institute an enforcement proceeding against a party or to compel the agency to initiate proceedings against a party).

"are barred by the doctrine of sovereign immunity." *Sprecher*, 716 F.2d at 975. The Second

Circuit has re-affirmed that principle, stating that "[a] district court has no jurisdiction to award

non-monetary relief against an agency on a claim that it is conducting an improper investigation

where another statute provides an exclusive avenue of redress, or where the action complained of

is committed to agency discretion. The exclusive method for testing the validity of the SEC's

investigatory *motives or methods* is a contested subpoena enforcement proceeding * * *."

*Sprecher v. Von Stein*, 772 F.2d 16, 18 (2d Cir. 1985) (emphasis added) (internal citations

omitted).

### B. The Court Should Dismiss this Matter in Recognition of the First-Filed Cases in the Southern District of Florida

The Court should not countenance Gentile's forum shopping and should dismiss this

matter in recognition of the first-filed subpoena enforcement actions in the Southern District of

Florida, which were filed two days before Gentile's complaint. Under long-standing precedent,

where there are parallel proceedings in different federal courts, the first court in which

jurisdiction attaches has priority to consider the case. "'In all cases of [federal] concurrent

jurisdiction, the court which first has possession of the subject must decide it.'" *Crosley Corp. v.

Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941), *cert. denied*, 315 U.S. 813 (1942), *quoting

Smith v. McIver*, 22 U.S. 532, 535 (1824). "The party who first brings a controversy into a court

of competent jurisdiction for adjudication should, so far as our dual system permits, be free from

the vexation of subsequent litigation over the same subject matter." *Crosley Corp.*, 122 F.2d at

930.

The limited exceptions to the first-to-file rule in this jurisdiction demonstrate why

Gentile's present complaint should be dismissed. In *EEOC v. Univ. of Penn.*, 850 F.2d 969 (3d

Cir. 1988), the court reexamined whether the first-to-file rule mandated that the second filed case

20

necessarily defer to the first. The court held that a first-filed case would not be given priority under the first-to-file rule because the plaintiff in the first-filed action improperly sought to preempt the subsequently filed subpoena enforcement action. *Id.* In the matter, the EEOC had informed the university that it would be filing a subpoena enforcement action in the Eastern District of Pennsylvania within 20 days unless the university complied with a subpoena. *Id.* at 973. Three days before the 20-day grace period ended, the university filed a suit for declaratory and injunctive relief in the district court for the District of Columbia, which, among other things, sought to quash the relevant subpoenas. *Id.* The EEOC subsequently filed its subpoena enforcement action in the district court for the Eastern District of Pennsylvania. *Id.* Citing *Crosley*, the university sought dismissal[15] of the subpoena enforcement action as a second-filed action. *Id.* The district court in the Eastern District of Pennsylvania denied the motion.

In affirming the denial of the dismissal, the Third Circuit stated that, "[t]he timing of the University's filing in the District of Columbia indicates an attempt to preempt an imminent subpoena enforcement in the Eastern District of Pennsylvania." *Id.* at 977. Recognizing that application of the first-to-file rule is within a court's discretion, the court of appeals affirmed the trial court's decision to defer to the second-filed case to avoid preempting the subpoena enforcement action. *Id.* at 978 ("Because the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law and preempt an imminent subpoena enforcement action.").

---

[15] In the alternative to dismissal, a court may apply the first-filed rule to stay or transfer the second matter. "It is well settled that absent special circumstances, this [first-filed] rule can be used by courts to stay, enjoin, or transfer a later-filed action." *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006). Here, however, it would not be appropriate to transfer the matter because Gentile cannot establish that any federal court would have jurisdiction over his claims as currently articulated.

Here, the subject matter of the subpoena enforcement actions in the Southern District of Florida is the same as the subject matter of Gentile's complaint now before this court. The very first line of the complaint states that he "brings this action for declaratory and injunctive relief to prevent the Commission – acting principally through its staff attorneys in the Miami Regional Office of the SEC – from continuing to abuse its investigatory process * * *." Compl. ¶ 1. And the relief he seeks includes an order "quashing all subpoenas served pursuant to the Traders Café FOI [the Miami Investigation]" and an order "declaring further investigation into Mr. Gentile pursuant to the November 5, 2013 Traders Café FOI [the Miami Investigation] * * * as without statutory authority and an abuse of process." *Id.* Not only is his complaint the later-filed of the cases at issue here, but it was explicitly filed in an attempt to preempt the subpoena enforcement action in the Southern District of Florida. PI Memo, at 8-9.

This Court should reject Gentile's effort to skirt jurisdiction in Florida where the investigation is centered. Gentile does not cite any factual nexus between New Jersey and the Miami Investigation. Nor can he as the Miami Investigation and the Penny Stock Fraud Case are substantively unrelated inasmuch as they do not:

- share the same facts;
- involve the same evidentiary or investigative locations;
- share a cause of action;
- involve the same type of violative conduct;
- share the same subject matter;
- raise the same legal issues;
- seek the same relief;
- arise from the same SEC investigation;
- share a Formal Order of Investigation; or
- involve the same SEC staff or regional office.

That the Penny Stock Fraud Case and Miami Investigation are separate has long been made clear to Gentile and the Court.

22

As explained above (*see* discussion *supra* at 5-7), the subject matter of the Penny Stock Fraud Case and the Miami Investigation differ. The Penny Stock Fraud Case involved allegations that Gentile, as a registered broker-dealer based in New York, engaged in manipulative trading, provided illegal kick-backs, and distributed promotional mailings to tout the stocks of a purported gold and silver exploration company and a natural gas production company. The complaint brought by staff of the NYRO charged Gentile with violations of Sections 5(a), 5(c), 17(a) and 17(b) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c), 77q(a) and 77q(b)], and Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

In contrast, the subpoena enforcement actions filed in the Southern District of Florida as part of the Miami Investigation relate to potential broker-dealer registration violations that do not concern the penny stock manipulation scheme at issue in the Penny Stock Fraud Case and did not arise from it. The Miami Investigation relates to Swiss America, a Bahamian broker-dealer owned by Gentile, and concerns potential violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a) (*see* Marin OSC (Ford Decl. Ex. 3) at 1-2; MinTrade OSC (Ford Decl. Ex. 4) at 1), which prohibits unregistered broker-dealers from purchases and sales of securities using interstate commerce. The violations at issue in the two matters, the statutes being invoked, and the potentially relevant facts simply differ.

Gentile's attempt to relate the Penny Stock Fraud Case to the Miami Investigation also does not meet the standard for related cases set forth in this Court's local rules. Local Rule 40.1(c) states that, "[w]hen a civil action * * * grows out of the same transaction as any case already pending in this Court * * * counsel shall at the time of filing the action inform the Clerk of such fact. Whenever possible, such action shall be assigned to the same Judge to whom the

pending related action is assigned." D.N.J. L.R. 40.1(c). The Penny Stock Fraud Case has been dismissed and is no longer pending before this Court. In addition, the actions grew out of different transactions: the Penny Stock Fraud Case involved stock manipulation, whereas the Miami Investigation involves potential broker-dealer registration violations. Gentile presumably understands that he does not satisfy the standard under Local Rule 40.1(c) insofar as he did not designate this action as related to the prior action before this Court. *See* Civil Cover Sheet, Dkt. 1.

Finally, Gentile has been on notice that these matters are substantively unrelated. From the first time the Miami Investigation was disclosed to him by issuance of subpoenas to him and related entities in August 2015, the SEC has consistently explained to Gentile, his lawyers, and this Court that the Penny Stock Fraud Matter and the Miami Investigation are separate. *See* May 12, 2016 Stipulation (Ford Decl. Ex. 9); April 26, 2017 Letter (Ford Decl. Ex. 11) at n.8; May 9, 2017 Letter from Nancy A. Brown to Hon. Joseph A. Dickson (Ford Decl. Ex. 6); May 25, 2017 Letter from Nancy A. Brown to Hon. Joseph A. Dickson (Ford Decl. Ex. 17). Gentile's current, disingenuous attempt to conflate these separate matters does not make them related.

The equities of this situation, which this Court may consider "when exercising its discretion" to dismiss or stay a subsequent suit under the first-filed rule, weigh in favor of dismissal here. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Requiring the Commission to litigate effectively the same matter simultaneously in two different fora would be wasteful, unnecessarily complicated, and inequitable. Gentile, on the other hand, would suffer no undue prejudice if this case were dismissed because he is not imminently subject to an adverse judgment. Moreover, by his own admission, he "intends to intervene in those recently-filed actions * * *" (PI Memo at 7), so, if he is able to satisfy the requirements of Fed. R. Civ. P. 24,

he could seek to intervene and assert his arguments challenging the legality of the Miami Investigation there.

Allowing this action to proceed concurrently with the Southern District of Florida subpoena enforcement actions would also create a likelihood that this Court and the Florida court would "be called upon to duplicate each other's work." *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970). Gentile is attempting to litigate the enforceability of subpoenas and an entire investigation being run out of the MIRO. And duplicated work could lead to differing legal conclusions about the enforceability of the subpoenas, a subject matter that is rightly before the Florida court.

Accordingly, a straightforward application of the first-filed rule and the principles of comity elucidated in *EEOC v. University of Pennsylvania* demonstrates that Gentile's attempt to circumvent the Miami subpoena enforcement proceeding should not be permitted.

## II.     Gentile Has Not Asserted A Proper Basis for Venue in This Court

Gentile cites 28 U.S.C. § 1391(b)(2), which provides that a "civil action may be brought in * * * a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred * * *." He also asserts that a substantial part of the events giving rise to the claim occurred in this jurisdiction and, specifically, that "the Commission has asserted to The Honorable Jose L. Linares that its investigation into Mr. Gentile under the Traders Café FOI is related to the civil complaint the Commission filed against Mr. Gentile in this court in March 2016." Compl. ¶ 17. But, as demonstrated above, this Court lacks jurisdiction over this action and thus Gentile's venue argument fails. Moreover, contrary to Gentile's assertion that substantial parts of the events giving rise to his claim occurred in this jurisdiction, the record

shows that the events related to the legality of the Miami Investigation have, in fact, occurred in Florida.

In any event, the Exchange Act contains a specific venue provision for litigation concerning a witness's refusal to comply with SEC investigative subpoenas. Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c), states that the Commission may seek a court order "within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business." *Id.* Here, the Miami Investigation is being conducted by the MIRO, and the relevant subpoenas seek the production of documents in Miami and testimony in Miami. Gentile does not claim the MIRO investigation is being carried on in New Jersey, that he resides or transacts business in New Jersey, that any recipient of a subpoena in the Miami Investigation resides in New Jersey, or that the subpoenas directed him or any witness to produce documents or appear for testimony in New Jersey. And it is undisputed here that the Southern District of Florida has jurisdiction to consider the Commission's subpoena enforcement proceedings. Thus venue is proper in Miami.

### III.    Gentile Fails to State a Claim Upon Which Relief Can Be Granted

This Court should also dismiss Gentile's complaint under Federal Rule of Civil Procedure 12(b)(6) as it fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Gentile "seeks to quash several subpoenas and any evidence obtained through them" and obtain a judgment "ordering the SEC to cease its unauthorized 'investigation.'" Compl. ¶ 5. Gentile complains about financial institutions that have allegedly severed their relationships with him or his businesses, purportedly after receipt of subpoenas from the SEC. Motion for PI, at 24. Gentile cannot state an abuse of process claim based on a purported right not to be investigated

26

or alleged business harms resulting from an investigation. But "[t]here is no constitutional right not to be investigated for suspected violations of federal law by an agency authorized by Congress to conduct such investigations in its discretion, or not to be injured in one's reputation or business prospects as a consequence of such an investigation." *Hunter v. SEC*, 879 F. Supp. at 501–02, *citing Federal Trade Comm'n. v. Standard Oil of California*, 449 U.S. at 244; *Paul v. Davis*, 424 U.S. 693, 709–12 (1976); *Hannah v. Larche*, 363 U.S. 420, 443 (1960); *Sturm v. Clark*, 835 F.2d 1009, 1011–13 (3d Cir. 1987).

It has long been established that the "Commission has the power, in its discretion, to make such investigation as it deems necessary to determine whether any person has violated federal securities laws." *SEC v. Knopfler*, 658 F.2d 25, 26 (2d Cir. 1981). Courts have generally looked at four criteria to determine whether to enforce a Commission subpoena: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information the Commission seeks is not already in its possession; and (4) the Commission has fulfilled the necessary administrative steps. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *RNR Enterprises, Inc. v. SEC*, 122 F.3d 93, 96-97 (2d Cir. 1997); *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975); *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1053 (2d Cir. 1973). Once the Commission satisfies these criteria, the burden shifts to the investigative subject to demonstrate the subpoena is unreasonable. *Brigadoon Scotch*, 480 F.2d at 1056. However, the burden of showing unreasonableness "is not easily met" as long as the SEC's inquiry is legally authorized and the information it seeks is relevant to the inquiry. *Id.*

As set forth in the Marin and MinTrade subpoena enforcement actions, the Miami Investigation revealed that Traders Café, a U.S.-based day trading firm, maintained a master account at SureTrader, the former name of Swiss America (which is now known as MintBroker

International Limited). The Miami Investigation also revealed that Swiss America and Gentile transferred U.S. customer funds from overseas to the U.S. bank account at Wells Fargo for Marin's company, Mint Custody. While repeatedly pointing out that the Traders Café FOI does not specifically name him and seeking to minimize the relevance of Traders Café master accounts and transfers, Gentile cannot reasonably dispute the relevance of those accounts and transactions to the investigation of Traders Café.[16] Indeed, Gentile provides nothing other than speculation to question whether the Miami Investigation and Traders Café FOI reflect a legitimate investigatory purpose.

As explained in the Marin OSC and MinTrade OSC, the information sought from the MIRO subpoenas is relevant and not in the Commission's possession. The Miami Investigation concerns, among other things, an overseas brokerage potentially soliciting U.S.-based customers in violation of the federal securities laws. Those customer accounts and funds, and the use of U.S. accounts to retain or utilize those funds, is highly relevant to the Miami Investigation. Marin OSC (Ford Decl. Ex. 3) at 14. Marin's Mint Custody company received and redirected some of these customer funds in the U.S. Marin had sole control over U.S.-based Swiss America customers' funds. *Id.* MinTrade, which holds itself out as a company providing custom technologies for financial services, brokerage firms and trade desks, is a Florida company based

---

[16] A central theme of Gentile's complaint about the Miami Investigation seems to be that he is being investigated despite not being specifically named in the Traders Café FOI. However, the inherent nature of investigations is that every person whose conduct is under investigation may not be known in advance. And, despite Gentile's innuendo to the contrary, this uncertainty is neither uncommon nor improper. The statute and regulations at issue, 15 U.S.C. § 78u and 17 C.F.R. § 202.5, do not "require that the order authorizing the investigation target by name a specific company or person suspected of violating securities laws. 'The SEC often undertakes investigations into suspicious securities transactions without any knowledge of which of the parties involved may have violated the law.'" *See RNR Enterprises,* 122 F.3d at 98, *quoting Jerry T. O'Brien*, 467 U.S. at 749.

in West Palm Beach that the Miami Investigation has revealed is connected to SureTrader (formerly known as Swiss America) and Gentile. MinTrade OSC (Ford Decl. Ex. 4) at 3. In particular, Nicholas Abadiotakis is MinTrade's registered agent and has been a trader at Stock USA Execution Services, LLC, a Gentile affiliate. *Id.* The MIRO staff took the administrative step of issuing subpoenas to Marin and MinTrade, but neither has complied. Thus the Commission has articulated a legitimate purpose for its Miami Investigation, as well as a nexus between the subject matter of the inquiry and the documents and testimony subpoenaed.

Moreover, for Gentile to prevail on his claim of improper investigative purpose, he "must prove that the improper purpose is that of the Commission, not merely that of one of its investigators * * * and the burden may not be met by the presentation of conclusory allegations." *Knopfler*, 658 F.2d at 26. Gentile does not argue that the *Commission* has an improper purpose in the Miami Investigation. Rather, he questions the motives of the MIRO staff. Compl. ¶ 9. But he provides no reason to believe that the persons who authorized the entry of the Traders Café FOI did so for any reason other than to investigate whether the securities laws were being violated based on concerns that there might be a violation. And the Traders Café FOI sets forth the legitimate concerns that supported its entry.

Even if Gentile could "show that one purpose underlying the subpoenas is improper"— which he cannot—"enforcement of the subpoenas is called for nonetheless so long as other, proper purposes exist." *In re McVane*, 44 F.3d 1127, 1139 (2d Cir. 1995), *citing FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980) and *Donaldson v. United States*, 400 U.S. 517, 532–33 (1971) (noting that taxpayer could claim that the IRS sought material for an improper purpose only if that purpose were the sole object of the investigation). While Gentile claims that the improper purpose of the Miami Investigation is retaliation for the loss in the Penny Stock Fraud

Case, the Miami Investigation pre-dates even the March 23, 2016 complaint against Gentile in the Penny Stock Fraud Case. The Traders Café FOI was issued in 2013, and the MIRO issued a subpoena to Gentile in August of 2015. Thus, even before the alleged motive for retaliation, there was a separate basis for the Miami Investigation.

## IV.    Gentile Is Not Entitled to a Preliminary Injunction

"The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat[.]" *Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "The Supreme Court, moreover, has instructed that the tool of the preliminary injunction should be reserved for 'extraordinary' situations." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000), *quoting Sampson v. Murray*, 415 U.S. 61, 88, 92 (1974).

A plaintiff seeking preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Beberman v. United States Dep't of State*, 675 F. App'x 131, 133 (3d Cir. 2017) *quoting Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). The movant bears the burden of showing that these four factors weigh in favor of granting the injunction. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). The "failure to establish any element * * * renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999); *see also In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction.").

*A.   Gentile Cannot Show a Likelihood of Success on the Merits of His Claim*

Gentile cannot establish that he is likely to succeed on the merits in this litigation,

because, as shown above, his complaint should be dismissed for lack of jurisdiction and failure

to state a cause of action upon which relief can be granted. This failure dooms his motion for a

preliminary injunction.

*B.   Gentile Cannot Show Irreparable Harm*

"[T]o demonstrate irreparable harm the plaintiff must demonstrate potential harm which

cannot be redressed by a legal or an equitable remedy following a trial. The preliminary

injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v.*

*ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (*quoting Instant Air Freight Co. v. C.F. Air*

*Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). It is not enough that the harm be "serious or

substantial * * *. [I]t must be of a peculiar nature, so that compensation in money cannot atone

for it." *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (*quoting Glasco v. Hills*,

558 F.2d 179, 181 (3d Cir. 1977)); *see also Beberman*, 675 F. App'x at 134.

Gentile complains of two types of harm absent the preliminary injunction: (1) past harm

caused by financial institutions that received subpoenas in the Miami Investigation and severed

ties with him; and (2) future harm that *might* result from other financial institutions that may

receive subpoenas and also sever ties with him. Neither circumstance demonstrates an

irreparable harm justifying a preliminary injunction.

First, Gentile complains that, as a result of the Miami Investigation and subpoenas issued

as part of that investigation, "*six* separate financial institutions have formally severed their

relationships with [him] or his business," and those "terminations are irrefutable proof that the

stigmatization caused by [the Commission's issuance of] unauthorized subpoenas has caused,

and will continue to cause irreparable harm." PI Memo, at 27-28. Even assuming that the

financial institutions' purported terminations of their relationships with Gentile were related to the subpoenas, these claims fail to show an immediate, irreparable harm. Rather, they only assert a possible past business injury that could be redressed by a monetary award against those entities if they improperly violated contractual obligations they owe Gentile. As Gentile may obtain damages from those entities, a preliminary injunction is not necessary to protect Gentile from the alleged harm he asserts. Accordingly, he fails to demonstrate an irreparable harm based on past subpoenas.

Second, Gentile argues that "[w]ithout urgent relief from this Court, the SEC will be free to proceed apace and irreparably damage other relationships[] or bring other actions that further stigmatize" him (PI Memo at 6-7), asserting that the next financial institution to terminate its relationship with him "is just one * * * subpoena away." PI Memo at 25. However, these are the very types of speculative harms long rejected by the Third Circuit as bases for a preliminary injunction. *See Adams*, 204 F.3d at 488 ("we have also insisted that the risk of irreparable harm must not be speculative"). Moreover, risk of a future harm to a business relationship could be compensated by monetary damages from the offending entities if they improperly terminate their business relationships with Gentile. *See Adams*, 204 F.3d at 484-85 (irreparable harm requirement only met "if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages").

Finally, Gentile argues that he "cannot be made whole by a money damages award, as the value of his relationships with the financial institutions and other companies he depends on for his business and personal needs is not subject to valuation." PI Memo at 24. However, he offers no evidence to support this bald assertion that business relationships with financial institutions is not subject to valuation or that his relationships with these financial institutions is peculiar in

32

nature. *ECRI,* 809 F.2d at 226 (citations and quotations omitted) ("The requisite feared injury or harm must be irreparable-not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it.").

Moreover, "the mere suggestion by [parties] of possible damage to their business activities is not sufficient to block an authorized inquiry into relevant matters." *AVCO Financial Corp. v. Commodity Futures Trading Comm'n*, 929 F. Supp. 714, 717 (S.D.N.Y 1996) *quoting SEC v. Brigadoon Scotch Dist. Co.*, 480 F.2d at 1056. In *AVCO*, plaintiff alleged that the CFTC's investigation tarnished AVCO's business reputation and that the CFTC had, among other things, harassed and intimidated customers causing them to cancel orders. The court held that "damage to business reputation arising generally from [the CFTC's] contact with AVCO's customers is speculative at best, and such customer contact has been found to be a sign of a thorough investigation, not harassment." *Id.* at 719 (internal citation and quotation omitted). As further explained by the Court of Appeals for the Second Circuit:

> Every person doing business and every investor knows that government agencies conduct investigations for a variety of reasons, and most of them feel the duty to respond to a proper inquiry. As for those whose practices are investigated, it is a necessary hazard of doing business to be the subject of an inquiry by a government regulatory agency.

*Brigadoon,* 480 F.2d at 1056.

Gentile appears to cite the March 4, 2019 Litigation Release for the subpoena enforcement actions (Ford Decl. Ex. 26) as evidence of something improper or harmful, arguing—again with no basis—that such a release is uncommon and harmful. However, a litigation release such as the one issued on March 4 is a long-standing and statutorily-authorized Commission practice. Moreover, it does not demonstrate an irreparable harm. As explained in *SEC v. Rivlin*, a press release such as this:

33

is typical of the Commission's practice in its enforcement program to issue a release announcing the filing of each complaint and describing the allegations. This has been the Commission's practice since 1942, and there have been no cases which state that this practice is a violation of due process.

In fact, this practice is authorized by Section 21(a) of the Securities and Exchange Act. See Securities and Exchange Act of 1934, 15 U.S.C. § 78u (1999) ("The Commission is authorized in its discretion, to publish information concerning any * * * violations" of securities law.); *Schmidt v. United States*, 198 F.2d 32, 36 (7th Cir. 1952) (upholding dismissal of plaintiff's complaint regarding the SEC's publication of reports of its investigations for failure to state a cause of action because such publication is specifically authorized by the Securities and Exchange Act). Furthermore, a litigation release describing the filing of the complaint "constitutes no adjudication of anything; it is merely a warning to the public." *Kukatush Mining Corp. v. SEC,* 198 F. Supp. 508, 510, *aff'd*, 309 F.2d 647 (D.C. Cir. 1962).

*SEC v. Rivlin*, No. 99-1455 (RCL), 1999 WL 1455758, at *3 (D.D.C. Dec. 20, 1999). Gentile's assertion that the release is "something the Commission appears to have not done in any case this year" demonstrates how misleading Gentile's characterization of the litigation release is. As a preliminary matter, the litigation release does not even name Gentile; it only states that the subpoena enforcement actions "seek documents from MinTrade, and documents and testimony from Marin, related to activities conducted by a foreign-based broker-dealer and its principal concerning potential violations of the federal securities laws * * *." In addition, the very last litigation release that the Commission issued in the final days of 2018 similarly announced a subpoena enforcement action. *See* Litigation Release No. 24380, "SEC Files Subpoena Enforcement in Possible Market Manipulation Scheme," *SEC v. Cherubim Interests, Inc.*, No. 2:18-mc-00175 (C.D. Cal. filed Dec. 21, 2018) (released Dec. 26, 2018) (Ferguson Decl. Ex. 5) (*available at* https://www.sec.gov/litigation/litreleases/2018/lr24380.htm).

34

C.  *The Balance of Equities Weighs Against Granting Gentile's Request for a Preliminary Injunction*

Gentile asks the Court to enjoin the Miami Investigation, arguing that it is necessary to avoid the risk of harm to his business opportunities. Despite Gentile's delaying tactics, the Commission has expended significant time and resources since at least 2014 in the Miami Investigation, and an injunction would halt the progress of that investigation. *See, e.g.*, *United States v. Judicial Watch, Inc.*, 241 F. Supp. 2d 15, 18 (D.D.C. 2003) (noting a stay of enforcement pending appeal may halt the progress of an administrative investigation and therefore prejudice the government agency). On the other hand, Gentile will not suffer any legally cognizable harm by defending a Commission subpoena enforcement action or other case against him. (And the Commission has not to date brought a subpoena enforcement action or a claim against Gentile as a result of the Miami Investigation.) *If* MIRO brings a subpoena enforcement action against Gentile or *if* the MIRO brings an action against Gentile as a result of its investigation, Gentile will have the opportunity to oppose the subpoena and contest any claim made against him.

D.  *The Public Interest Weighs in Favor of Denying Gentile's Request for a Preliminary Injunction*

"There is a substantial public interest in permitting a federal agency to exercise its statutory duties * * *. The harm to the SEC in its ability to fulfill its mission generally and with regard to [defendant] if an injunction were granted outweighs the harm alleged by plaintiff, the type of harm which necessarily accompanies many official investigations." *Hunter*, 879 F. Supp. at 502, *citing SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). Further, permitting the Commission to continue its investigation serves the public interest in the Commission uncovering and prosecuting violations of the federal securities laws and, where appropriate, obtaining relief for investors and injunctions against illegal conduct. Moreover, an

injunction here would be contrary to Congress's express grant of discretion to the Commission to pursue such investigations as it deems necessary. *See* 15 U.S.C. § 78u(a).

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's complaint. In the alternative, the Court should transfer the proceeding to the Southern District of Florida. Further, the Court should deny plaintiff's motion for a preliminary injunction.

Date:  March 29, 2019                          /s/ Matthew S. Ferguson

Matthew S. Ferguson
U.S. Securities and Exchange Commission
Office of the General Counsel
100 F Street NE
Washington, DC 20549

FergusonMA@sec.gov
202-551-3840
Fax: 202-772-9263

36