|  |  |
|---|---|
| GUY GENTILE,<br><br>              Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE<br>COMMISSION,<br><br>              Defendants. | Civil Action No.: 19-5155 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Guy Gentile's motion for a preliminary injunction against Defendant Securities and Exchange Commission ("SEC"), (ECF No. 5), and the SEC's motion to dismiss, (ECF No. 11). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the SEC's motion to dismiss and denies Plaintiff's motion for a preliminary injunction as moot.

## I.    BACKGROUND[1]

The Court has previously summarized the facts underlying this dispute in its March 8, 2019 Opinion denying Plaintiff's *ex parte* application for a temporary restraining order ("TRO"). (ECF No. 6). The Court therefore includes an abbreviated statement of the factual and procedural history to the extent such background is relevant to the instant motions.

---

[1] This background is derived from allegations in the Complaint, (ECF No. 1 ("Compl.")), which the Court accepts as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

On February 8, 2019, Plaintiff filed this action for declaratory and injunctive relief to prevent an ongoing investigation into his activities conducted by the Miami Regional Office of the SEC. (Compl. ¶ 1). Since around August of 2015, Plaintiff has been aware of an SEC investigation out of the Miami Regional Office into whether Plaintiff and his Bahamas-based broker-dealer, SureTrader, improperly solicited United States customers. (Compl. ¶¶ 27, 36–37, 88). According to Plaintiff, the Florida SEC investigation relies on a formal order of investigation ("FOI") dated November 5, 2013 entitled "In the matter of Traders Café, LLC," which authorizes an investigation into individuals related to an entity called Traders Café. (Compl. ¶ 2). The Traders Café FOI "makes no reference to [Plaintiff] or anyone or anything related to him." (Compl. ¶ 2). Indeed, Plaintiff alleges that there is no connection whatsoever between Traders Café and Plaintiff's Bahamian broker-dealer, other than the fact that Traders Café maintains or maintained an account at Plaintiff's broker-dealer. (Compl. ¶¶ 2, 27, 30). Plaintiff therefore argues that the Traders Café FOI is an improper basis for an investigation into Plaintiff and his broker-dealer, and that the SEC Miami Regional Office lacks the necessary authority to proceed or to enforce existing subpoenas absent a proper FOI. (Compl. ¶¶ 1–3, 33). Accordingly, Plaintiff's action seeks "to quash several subpoenas and any evidence obtained through them that [were] served . . . pursuant to the Traders Café FOI." (Compl. ¶ 5). He also seeks "a declaration ordering the SEC to cease its unauthorized 'investigation.'" (Compl. ¶ 5).

Plaintiff further alleges that the Florida investigation is an attempt by the SEC to revive claims against Plaintiff that were dismissed by this Court in 2017. (Compl. ¶¶ 60–61). The Court assumes the parties' familiarity with the facts underlying the prior SEC civil enforcement proceedings against Plaintiff before this Court, but a brief summary is provided to the extent the facts are relevant to the instant motions. In March of 2016, the SEC Northeast Regional Office

filed a complaint against Plaintiff seeking equitable relief in connection with two penny stock manipulation schemes. *SEC v. Gentile*, No. 16-1619, 2017 WL 6371301, at *1 (D.N.J. Dec. 13, 2017). On December 13, 2017, this Court dismissed the SEC's complaint, concluding that the action was barred by a five-year statute of limitations under 28 U.S.C. § 2462. *Id.* at *4. The SEC appealed that decision, which remains under review by the Third Circuit. *See SEC v. Gentile*, No. 18-1242 (3d Cir., filed Feb. 2, 2018). Plaintiff alleges that the SEC is using the Florida investigation as a pretext to gather additional information to further its case in New Jersey and to overcome the statute of limitations. (Compl. ¶¶ 60–61). He also argues that, to the extent the Florida investigation was ongoing during periods when the New Jersey enforcement proceedings were stayed, any subpoenas issued during that time violated the stay. (Compl. ¶ 62).

On February 6, 2019, the SEC Miami Regional Office filed two actions in the United States District Court for the Southern District of Florida to enforce subpoenas issued to Carla Marin, Plaintiff's personal attorney, (Compl. ¶ 78), and MinTrade Technologies, LLC, seeking testimony and documents related to Plaintiff and his Bahamian broker-dealer. (Compl. ¶ 94); *see also SEC v. Marin*, No. 19-20493 (S.D. Fla., filed Feb. 6, 2019); *SEC v. MinTrade Techs., LLC*, No. 19-20496 (S.D. Fla., filed Feb. 6, 2019). These Florida enforcement proceedings prompted Plaintiff's initiation of this action two days later. (Compl. ¶ 94). On March 4, 2019, the SEC issued Litigation Release No. 24415, publicly announcing the enforcement actions against Marin and MinTrade Technologies. (ECF No. 5-28). The Litigation Release describes the subpoenas as seeking documents and testimony "related to activities conducted by a foreign-based broker-dealer and its principal concerning potential violations of the federal securities laws involving solicitation of U.S.-based customers and the movement of customer funds." (ECF No. 5-28).

Plaintiff filed an *ex parte* application for a TRO and preliminary injunction motion one day

3

after the SEC issued the Litigation Release. (ECF No. 5). Plaintiff argues that the language in the Litigation Release "explicitly refer[s] to [Plaintiff] and his Bahamas-based broker-dealer." (ECF No. 5-40 ("PI Br.") at 5). Plaintiff claims that the release "was intended to tar [Plaintiff] as a wrongdoer" and to "inflict maximum harm to [Plaintiff] before this Court had an opportunity to rule on his cause of action." (PI Br. at 5). Plaintiff argues that the ongoing Florida investigation is intended only to harass him, to blacklist him in his business community, and to circumvent this Court's 2017 dismissal of the SEC's claims of penny stock manipulation. (PI Br. at 6, 28). Plaintiff therefore asked this Court for immediate intervention to stem the ongoing stigmatization and loss of business that has resulted from the Florida investigation. (PI Br. at 9–10).

On March 8, 2019, this Court denied Plaintiff's application for a TRO, concluding that Plaintiff had "failed to demonstrate a 'clear showing of immediate irreparable injury' in the absence of a TRO" pending a decision on the preliminary injunction motion. (ECF No. 6 at 5 (quoting *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)). The Court ordered the SEC to reply to Plaintiff's preliminary injunction motion and directed the parties "to address any issues concerning the proper jurisdiction and/or venue for this matter in their briefing." (ECF No. 7 at 2). On March 29, 2019, the SEC filed a combined opposition to Plaintiff's preliminary injunction motion and a motion to dismiss. (ECF No. 11). The SEC moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this Court lacks subject matter jurisdiction over this action because the SEC has not waived sovereign immunity. (ECF No. 11-1 ("MTD Br.") at 21–27). The SEC also argues that the Southern District of Florida retains exclusive jurisdiction under the first-to-file rule, (MTD Br. at 27–32), that venue is improper in this District, (MTD Br. at 32–33), and that the Complaint fails to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure, (MTD Br. at 33–37).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.  When a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of persuasion.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  A motion under Rule 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000).  Under a facial attack, the movant challenges the legal sufficiency of the claim and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id.* The SEC's motion presents a facial challenge to the Court's jurisdiction as it is based on the defense of sovereign immunity.  *Dempsey v. United States*, No. 15-2847, 2015 WL 6561217, at *1 (D.N.J. Oct. 29, 2015).

## III.  ANALYSIS

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *Untied States v. Sherwood*, 312 U.S. 584, 586 (1941)).  It is well-settled that "[w]ithout a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities."  *Treasurer of N.J. v. U.S. Dep't of the Treasury*, 684 F.3d 382, 395 (3d Cir. 2012). Such a waiver "must be express and unambiguous to confer subject matter jurisdiction on a court."  *Id.* at 396.  A waiver "must be strictly construed in favor of the sovereign, and the terms of the waiver define the extent of the court's jurisdiction."  *Id.* (internal citations omitted).

Plaintiff argues that Section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 702, provides the necessary waiver of sovereign immunity in this case. (ECF No. 16 at 20–23).

The Third Circuit has recognized that "[S]ection 702, when it applies, waives sovereign immunity in 'nonstatutory' review of agency action under [23 U.S.C. §] 1331." *Jaffee v. United States*, 592 F.2d 712, 718 (3d Cir. 1979). Section 702 of the APA provides, in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. Plaintiff asserts that the "plain language [of] Section 702 waives sovereign immunity for actions against an agency, such as [Plaintiff's] action here, that seek relief other than money damages." (ECF No. 16 at 20).

First, the SEC responds that, in order for the sovereign immunity waiver in Section 702 to apply, the APA's other provisions—namely, Section 704—must be satisfied. (MTD Br. at 23). Section 704 of the APA governing reviewable agency actions provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.'" 5 U.S.C. § 704. The SEC argues, therefore, that the APA does not waive sovereign immunity over challenges to actions other than "final agency action" or actions "for which there is no other adequate remedy." (MTD Br. at 23–24). The Third Circuit has expressly rejected this argument, clarifying that "the waiver of sovereign immunity in [S]ection 702 extends to all nonmonetary claims against federal agencies and their officers, regardless of whether or not the cases seek review of 'agency action' or 'final agency action' as set forth in [S]ection 704." *Treasurer of N.J.*, 684 F.3d at 397 (quoting 5 U.S.C. § 704). Simply

put, "[S]ection 704 in limiting review to 'final agency action' . . . does not provide a basis for dismissal on grounds of sovereign immunity." *Id.* at 400.

Next, the SEC argues that an exception to the APA's sovereign immunity waiver applies here. (MTD Br. at 25). Section 702 provides that "[n]othing herein . . . affects other limitations on judicial review." 5 U.S.C. § 702. The SEC proposes that Section 21(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(c) ("Section 78u(c)"), which authorizes the SEC to seek judicial enforcement of its subpoenas in federal court, presents one such limitation, as it establishes the exclusive remedy for challenging the validity of SEC investigations.[2] (MTD Br. at 25).

The Second Circuit has endorsed the SEC's view. In *Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983), the Second Circuit considered an action brought by the subject of an SEC investigation against the SEC and several of its officials. The SEC had issued a subpoena to Sprecher and was seeking enforcement of the subpoena in the Southern District of New York. *Id.* at 971. In the meantime, Sprecher filed a collateral lawsuit in the Eastern District of New York seeking to enjoin the investigation, arguing that, *inter alia*, the investigation constituted harassment. *Id.* The Eastern District dismissed the case, and Sprecher appealed. *Id.* Noting "the axiomatic proposition that the United States and federal agencies are immune from suit unless Congress has expressly waived sovereign immunity," the Second Circuit first found that the only plausible immunity waiver applicable to Sprecher's action was the one found in Section 702 of the

---

[2] The relevant language of Section 78u(c) is as follows: "In case of contumacy by, or refusal to obey a subp[o]ena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records. And such court may issue an order requiring such person to appear before the Commission or member or officer designated by the Commission, there to produce records, if so ordered, or to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof." 15 U.S.C. § 78u(c).

APA. *Id.* at 973. However, the court concluded that the immunity waiver did not apply to Sprecher's action, which fell into Section 702's "proviso" that the immunity waiver "does not '[affect] other limitations on judicial review.'" *Id.* at 974 (quoting 5 U.S.C. § 702). The court reasoned, based on the legislative history of the APA, that "Congress did not intend to waive sovereign immunity . . . where 'another statute provides a form of relief which is expressly or impliedly exclusive.'" *Id.* (quoting H.R. No. 94–1656, p. 3, 94th Cong. 2d Sess. (1976)). Because Section 78u(c) establishes judicial enforcement and review of SEC subpoenas, which "are unenforceable absent a court order," the court held that "Section 78u(c) is the exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts." *Id.* at 975. The court therefore held that Sprecher's action to enjoin the SEC investigation fell "within the proviso to Section 702 preserving existing limitations on judicial review and [was] barred by sovereign immunity." *Id.* at 974.

In a follow-on case to *Graber*, the Second Circuit reaffirmed its holding, plainly stating that "[a] district court has no jurisdiction to award non-monetary relief against an agency on a claim that it is conducting an improper investigation where another statute provides an exclusive avenue of redress," and that no such jurisdiction existed to review a collateral challenge to an SEC investigation, because "[t]he exclusive method for testing the validity of the SEC's investigatory motives or methods is a contested subpoena enforcement proceeding under 15 U.S.C. § 78u(c)." *Sprecher v. Von Stein*, 772 F.2d 16, 18 (2d Cir. 1985).

District courts in the Second Circuit and elsewhere continue to follow the *Sprecher* cases in holding that Section 702 of the APA does not waive sovereign immunity for actions against the SEC challenging the validity of its investigations because Section 78u(c) establishes the exclusive mechanism for such challenges. *See, e.g., Arjent LLC v. SEC*, 7 F. Supp. 3d 378, 383 (S.D.N.Y.

8

2014) (holding that Section 702 did not waive sovereign immunity in collateral suit for injunctive relief against SEC, reasoning that "[b]ecause . . . the subpoena enforcement proceeding provides an opportunity for judicial review of both an investigation's legitimacy, and a subpoena's legitimacy, the proceeding [pursuant to Section 78u(c)] 'is the exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts'") (quoting *Graber*, 716 F.2d at 975); *Finazzo v. SEC*, No. 08-2176, 2008 WL 3521351, at *3 (S.D.N.Y. Aug. 8, 2008) (same); *Treats Int'l Enters., Inc. v. SEC*, 828 F. Supp. 16, 19 (S.D.N.Y. 1993) (denying plaintiff's motion for a preliminary injunction and granting SEC's motion to dismiss for lack of subject matter jurisdiction, concluding that the "complaint seeking to enjoin the SEC's investigation is beyond the limited scope of review available in this court"); *see also Cook v. SEC*, 664 F. Supp. 2d 997, 999 (D. Minn. 2009) (denying motion to stay SEC investigation for lack of subject matter jurisdiction, holding that "[a] subpoena enforcement action is the exclusive method by which the validity of [an SEC] investigation may be challenged").

This Court is persuaded by the well-reasoned decisions in the *Sprecher* cases and their progeny. The parties cite to no case within the Third Circuit either endorsing or rejecting the SEC's argument,[3] and the Court has found no such case in its independent review of the legal landscape. Accordingly, the Court follows the *Sprecher* decisions in concluding that Plaintiff's

---

[3] Plaintiff cites to *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118 (3d Cir. 1981) as a case "rul[ing] that district courts have jurisdiction to hear challenges of unauthorized SEC investigations." (ECF No. 16 at 21–22). Plaintiff's reliance on *Wheeling-Pittsburgh* as support for his argument that Section 702 waives sovereign immunity in his case is unavailing. *Wheeling-Pittsburgh* involved an action *by the SEC* to enforce a subpoena, in which the defendant filed an answer requesting an injunction against the investigation, arguing that the agency had acted in bad faith. 648 F.2d at 122–23. As *Wheeling-Pittsburgh* was not an action *against* the United States or a federal agency, the court did not address the doctrine of sovereign immunity at all. Instead, the case is an example of the kind of action that is permissible under *Sprecher*: a challenge to an SEC investigation brought not as a collateral action naming the agency as a defendant, but rather brought as a defense in the context of a Section 78u enforcement proceeding—in other words, utilizing "the exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts." *Graber*, 716 F.2d at 975.

challenge to the validity of the SEC's investigation outside of an SEC enforcement proceeding under Section 78u(c) is barred by the doctrine of sovereign immunity and is therefore beyond this Court's power to review.

Plaintiff argues that Section 78u(c) "provides no guidance on the question of how the target of an unauthorized investigation can assert his rights," and that the Florida enforcement proceedings provide an inadequate remedy because they "are summary proceedings which do not include the full rights to litigate the case." (ECF No. 16 at 24, 26 n.14). The Second Circuit in the *Sprecher* cases considered this argument, granting that "the sole reason for authorizing plenary abuse of process actions in addition to Section 78u(c) proceedings would be a fear that judicial scrutiny in the latter is too circumscribed." *Graber*, 716 F.2d at 975. The court rejected that argument, however, finding that it "collides head on with the express intention of the Congress in enacting Section 702 to preserve existing 'limitations on judicial review.'" *Id.* (quoting 5 U.S.C. § 702). This Court likewise concludes that Plaintiff's concern about the relative strength of the Section 78u(c) remedy "runs counter to the very thrust of Section 702, which was designed to waive sovereign immunity only in situations when specific provisions establishing judicial review do not exist and to leave untouched areas in which such review was . . . the subject of explicit legislation." *Id.* at 974–75.

Plaintiff cites to *Gupta v. SEC*, 796 F. Supp. 2d 503 (S.D.N.Y. 2011), to argue that the SEC is not immune from actions like Plaintiff's that seek non-monetary relief. (ECF No. 16 at 20). However, in concluding that Section 702 waived sovereign immunity in Gupta's suit against the SEC, the Southern District of New York held that Section 25(a)(1) of the Exchange Act did not fall within the exception for exclusive mechanisms of review that was established in the *Sprecher* cases. 796 F. Supp. 2d at 509. In other words, *Gupta* merely declined to extend *Sprecher*—which

concerned Section 78u(c), as does the case here—to another provision of the Exchange Act. Accordingly, *Gupta* does not undermine the reasoning in the *Sprecher* cases nor their application to the instant litigation.

Similarly, Plaintiff cannot rely on *Int'l Waste Controls, Inc. v. SEC*, 362 F. Supp. 117 (S.D.N.Y.) ("*IWCI*"), *aff'd* 485 F.2d 1238 (2d Cir. 1973) to argue that the Court has subject matter jurisdiction over his action. First, the court in *IWCI* dismissed the plaintiff's claims for injunctive relief against the SEC on sovereign immunity grounds, so that case hardly supports the exercise of jurisdiction here. 362 F. Supp. at 120. Second, after the decision in *IWCI*, "the Second Circuit subsequently issued the *Sprecher* Cases, thus[] effectively abrogating any earlier Second Circuit district court rulings that might have arrived at a conclusion contrary to that of the *Sprecher* Cases." *SEC v. Huff*, No. 08-60315, 2009 WL 10667890, at *9 (S.D. Fla. Oct. 8, 2009). "Therefore, *ICWI* does not provide a basis for this Court to conclude that it has jurisdiction to entertain [Plaintiff's] [m]otion" for a preliminary injunction in this case. *Id.*

Finally, Plaintiff attempts to distinguish *Sprecher* and *Arjent* by arguing that the plaintiffs in those cases were the subjects not only of the SEC's investigations but of the Section 78u(c) subpoena enforcement proceedings themselves, and that those plaintiffs therefore had genuine opportunities to challenge the SEC's motives and methods in court outside of their collateral actions. (ECF No. 16 at 25–26). Here, by contrast, the SEC has commenced subpoena enforcement actions against two witnesses other than Plaintiff, forcing Plaintiff to bring his challenge collaterally or to intervene in the Florida actions. Plaintiff maintains that the SEC has issued subpoenas only to other witnesses as part of an effort to "avoid any judicial test of its conduct," and expresses a desire for an enforcement action against him so that he might have an opportunity to challenge the SEC's investigation. (ECF No. 16 at 24).

The Court finds that the reasoning underlying the *Sprecher* line of cases is not so narrow as to bar only those collateral challenges brought by direct subjects of SEC subpoena enforcement actions. "A district court has no jurisdiction to award non-monetary relief against an agency on a claim that it is conducting an improper investigation where another statute provides an exclusive avenue of redress." *Von Stein*, 772 F.2d at 18. In enacting Section 78u(c) as the "exclusive avenue" for challenging an SEC investigation, Congress did not necessarily guarantee that this avenue would be available at any time to any individual or entity who could conceivably be implicated by that investigation.[4] Rather, that avenue is guaranteed to those individuals and entities presently facing direct legal consequences from the SEC's enforcement authority. *See Arjent*, 7 F. Supp. 3d at 384 ("Parties who are the subject of [SEC] subpoenas are free in a [subpoena enforcement proceeding] to raise claims of abuse of process.") (quoting *Graber*, 716 F.2d at 974). "[T]he subpoena enforcement proceeding provides an opportunity for judicial review of both an investigation's legitimacy [as well as] a subpoena's legitimacy." *Id.* at 383. Accordingly, the subjects of the Florida enforcement proceedings are free to challenge the SEC's motives or methods or to argue that the investigation is unauthorized—as indeed they already have—in those actions. *See* Response to Petition (Complaint) to Enforce/Compel at 15–19, *Marin*, No. 19-20493 (S.D. Fla. Mar. 8, 2019) (ECF No. 13); Response to Petition (Complaint) to Enforce/Compel at 9–11, *MinTrade Techs.*, No. 19-20496 (S.D. Fla. Feb. 26, 2019) (ECF No. 13). Contrary to Plaintiff's argument, then, the necessity of Section 78u(c) proceedings ensures that the

---

[4] Indeed, at least in this forum and under these circumstances, it is less than clear that Plaintiff—a non-party to the judicial intervention sought in connection with the Florida investigation thus far—is in a position to challenge the investigation as an abuse of process. *Cf. Huff*, 2009 WL 10667890, at *7 (holding that Section 78u(c) "does not justify jurisdiction for the Court to entertain the Huffs' requests to quash the SEC subpoenas as they relate to individuals and entities other than the Huffs and the companies they own," since "[t]hese other individuals and entities' failures to comply with the SEC subpoenas could not . . . expose the Huffs to criminal prosecution").

agency is not able to "avoid any judicial test of its conduct." (ECF No. 16 at 24).

Moreover, Plaintiff acknowledges that he has already moved to intervene in the two Florida enforcement actions to lodge his abuse-of-process claim. (ECF No. 16 at 20 n.11, 26 n.14). The SEC has opposed Plaintiff's intervention in those actions. Response in Opposition re Motion to Intervene, *Marin*, No. 19-20493 (S.D. Fla. Apr. 22, 2019) (ECF No. 45); Response in Opposition re Motion to Intervene, *MinTrade Techs.*, No. 19-20496 (S.D. Fla. Apr. 24, 2019) (ECF No. 24). This Court does not take a position on whether Plaintiff may intervene in those actions under Federal Rule of Civil Procedure 24, as that issue is solely before the Southern District of Florida. The Court merely notes that proper intervention in those actions may provide an adequate forum for Plaintiff to challenge the Florida investigation in a manner consistent with Section 702's limited waiver of sovereign immunity. Nevertheless, Plaintiff argues that this Court must entertain his motion because he "should not be forced to individually intervene and defend against each SEC subpoena enforcement action pursuant to [the Trader's Café FOI], . . . [as s]uch a requirement would subject him to potentially endless litigation." (ECF No. 16 at 26 n.14). But Plaintiff is by no means "forced" to intervene in the Florida actions; he is free to reserve his challenge to the integrity of the investigation in the context of an eventual SEC enforcement proceeding against him. The fact remains that Congress has designated an exclusive mechanism for such challenges, and that mechanism is in response to a proceeding initiated by the SEC.

Plaintiff will have an opportunity and a forum in which to challenge the Florida investigation's legitimacy when or if the SEC seeks some judicial intervention *as to him*—*i.e.*, a subpoena enforcement proceeding under Section 78u(c) or a civil enforcement action under Section 78u(d). Plaintiff's argument here "is, in effect, that because [he has] a good defense to [an eventual] enforcement action . . . , the S.E.C. will not be successful; and since the agency will not

ultimately succeed, the [C]ourt should intervene now to stop adverse publicity." *First Jersey Secs., Inc., v. S.E.C.*, 553 F. Supp. 205, 211–12 (D.N.J. 1982) (denying request for an order enjoining SEC from filing complaint "[b]ecause plaintiffs have an adequate remedy at law, [and] this court lacks jurisdiction to issue the requested injunction"). Plaintiff may properly raise his challenge as a defense in an action instituted by the SEC, but, until that time, Plaintiff may not bring a collateral action to enjoin the investigation.[5] The Court therefore concludes that it lacks subject matter jurisdiction to hear this case.[6]

## IV.    **CONCLUSION**

For these reasons, the SEC's motion to dismiss is granted. Plaintiff's motion for a preliminary injunction is denied as moot. An appropriate Order accompanies this Opinion.

DATED: May ___/4th___, 2019

JOSE L. LINARES
Chief Judge, United States District Court

---

[5] Insofar as Plaintiff argues that *Huff*, 2009 WL 10667890, stands for the proposition that "once the [SEC] invokes a district court's process to enforce a subpoena, [it] waives sovereign immunity and opens itself up to suit," Plaintiff mischaracterizes *Huff*. (ECF No. 16 at 22; *see also* ECF No. 16 at 27 ("[Plaintiff] believed he had to wait until the SEC tried to enforce a subpoena in court before bringing his case for abuse of process against the SEC in the District of New Jersey.")). The court in *Huff* relied on the *Sprecher* cases to conclude that the plaintiffs' claims for injunctive relief against the SEC were barred by sovereign immunity, as they "[did] not arise in the context of proceedings initiated by the SEC to enforce the subpoenas at issue." 2009 WL 10667890, at *7. The court merely characterized the issue decided by the *Sprecher* cases and their progeny as "[w]hether jurisdiction lies to consider a claim that seeks to enjoin an SEC investigation before the SEC has attempted to enforce subpoenas issued in that investigation." *Id.* at *4. To the extent Plaintiff reads this as a suggestion that once the SEC commences a subpoena enforcement proceeding, it opens itself up to challenges *within that proceeding*, such a suggestion in no way implies that the commencement of the proceeding waives sovereign immunity for collateral attacks on the SEC's investigation in other forums.

[6] The SEC argues alternatively that the APA's sovereign immunity waiver does not apply to actions challenging "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Although the *Sprecher* cases support this view, *see Graber*, 716 F.2d at 974–75, the Court need not opine on this exception to Section 702, as the Court finds that sovereign immunity bars this action on other grounds.